# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3776

_____

Robert Aaron Peterson

*Plaintiff - Appellant*

v.

Officer Michael Kopp, in his individual and official capacities; Metropolitan Council

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 21, 2013
Filed: June 11, 2014

_____

Before RILEY, Chief Judge, BRIGHT and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Robert Peterson sued public transit officer Michael Kopp and Metropolitan Council (collectively "the defendants")[1] under 42 U.S.C. § 1983, alleging Kopp

_____

[1]Kopp is a public transit officer for Metro Transit Police Department ("MTPD"); MTPD is a subsidiary agency of the Metropolitan Council, a political subdivision of the state of Minnesota. MTPD ensures the safety of the transit system.

violated Peterson's First and Fourth Amendment rights when he arrested him at a downtown St. Paul bus stop. Specifically, Peterson asserts that Kopp arrested him without probable cause, used excessive force, and did so in retaliation for engaging in protected speech. Peterson also brought several state law claims against the defendants. The district court granted summary judgment to the defendants on Peterson's federal claims, finding Kopp was entitled to qualified immunity, and declined to exercise supplemental jurisdiction over Peterson's state law claims. Having jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, vacate the dismissal of Peterson's state law claims, and remand for further proceedings.

## I. Background[2]

On April 25, 2011, at approximately 11:00 p.m., Peterson and his friend Brianna Bloom were waiting for a bus in downtown St. Paul. While waiting, the two of them sat on top of bicycle lockers (approximately four feet tall) located behind the bus stop. Three young men, also at the bus stop, approached and asked Peterson about the hookah pipe sticking out of his backpack. Peterson and Bloom subsequently agreed to smoke the hookah pipe with them, deciding they could skip the first bus and wait for another to arrive.

Kopp, on duty at the time, observed the five individuals from his squad car. According to the MTPD's Chief of Police, MTPD officers are dispatched to this particular bus stop more than any other stop in downtown St. Paul. Kopp approached the group after noticing they did not take any of the several buses that had stopped. He asked them which buses they were waiting for; because the buses they mentioned

MTPD officers are licensed peace officers who are permitted to perform all functions of peace officers authorized by law.

[2]We recite the facts in the light most favorable to Peterson as the nonmoving party. Atkinson v. City of Mountain View, 709 F.3d 1201, 1205 n.1 (8th Cir. 2013).

-2-

had already come and gone while they had been at the stop, Kopp told everyone to leave. Several of the individuals began walking away from the bus stop, though they stayed in the vicinity—walking approximately 6–8 feet away. One man remained at the stop and told Kopp that he did not have to leave as he was entitled to wait at a public bus stop; the two argued with each other for approximately 30–90 seconds before he too walked away. During this exchange, Peterson remained seated on top of the lockers, disassembling the hookah. According to Peterson, disassembly takes approximately one minute.

While still sitting on the bicycle lockers, Peterson said to Kopp, "[w]e are leaving. You don't have to be rude." Peterson then took out his phone and asked Kopp for his badge number. Kopp responded, "[y]ou have no right to have my badge number." To which Peterson replied, "I have every right." Kopp then grabbed Peterson's arm and pulled him off the bicycle lockers. Kopp originally testified that he pulled Peterson off the bicycle lockers to get him going, but later in the same deposition said he pulled him down to place him under arrest. Kopp released Peterson's arm. Peterson then took a few steps backward, put his hands up, and said "[y]ou can't handle me like that." Immediately after this statement, Kopp pepper sprayed Peterson directly in the face for two seconds. Peterson stumbled around and yelled out, "What the f***? What the f***? What did I do? I didn't do anything. Police brutality." Kopp responded, "[y]ou want to see police brutality?" He then pushed Peterson into the bicycle lockers, handcuffed him, and placed him in the back of the squad car. Kopp did not tell Peterson that he was under arrest or was being detained until after he was placed in the car. Kopp issued Peterson a citation for misdemeanor trespass, in violation of Minn. Stat. § 609.605, subd. 1(b)(3).

During his deposition, Peterson testified that he suffered severe pain and burning over his face and both eyes and difficulty breathing immediately following the pepper spray. He had pain, discomfort, and sensitivity to his face and eyes for 5–7 days after his arrest. The skin tissue directly below his left eye also started to peel

several days after his arrest. Peterson explained that he is more uncomfortable out in public, believing "some painful experience . . . could happen at any point anywhere." However, he acknowledged that he has not changed his daily activities in any way as a result. Peterson also did not seek medical attention for his physical or emotional symptoms.

The trespass charge against Peterson was later dismissed, and Peterson then brought the instant suit against Kopp and the Metropolitan Council under 42 U.S.C. § 1983. The defendants moved for summary judgment, and the district court granted the motion on the basis of qualified immunity.

## II. Discussion

"We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We also review the finding of qualified immunity de novo. Amrine v. Brooks, 522 F.3d 823, 830 (8th Cir. 2008).

Government officials, including police officers, are entitled to qualified immunity, shielding them from liability, "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Chambers, 641 F.3d at 904 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). We analyze qualified immunity in two steps: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

## A. Fourth Amendment Unlawful Arrest

Peterson first argues that Kopp violated his Fourth Amendment right to be free from unreasonable seizures by arresting him without probable cause. The parties agree that Peterson was seized, and under arrest, at the moment Kopp pulled Peterson off the bicycle lockers. A police officer may, consistent with the Fourth Amendment, arrest someone without a warrant if the officer has probable cause to believe the person has committed a crime. Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)). Probable cause exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Ulrich v. Pope Cnty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quotation omitted). To receive qualified immunity, however, a police officer need only have "arguable probable cause" to make the arrest. Bernini v. City of St. Paul, 665 F.3d 997, 1003 (8th Cir. 2012). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." Ulrich, 715 F.3d at 1059 (quotation omitted).

Minnesota's criminal trespass statute reads: "A person is guilty of a misdemeanor if a person intentionally . . . trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor." Minn. Stat. § 609.605, subd. 1(b)(3). The Minnesota Court of Appeals has explained that a refusal to depart is a necessary element of Minnesota's trespass statute. State v. Zimmer, 478 N.W.2d 764, 768 (Minn. Ct. App. 1991) (finding that as a matter of law an individual could not be guilty of trespass when he immediately left the building and went to his car upon being asked to leave). Under this statute, a refusal to depart does not have to be verbal or protracted. See State v. Quinnell, 151 N.W.2d 598, 602 (Minn. Ct. App. 1967) (upholding trespass conviction when a police officer told a man to leave, but the man "said nothing in reply," and

walked back and forth for three minutes); <u>see also</u> Merriam–Webster Online Dictionary, available at http://www.merriam-webster.com/dictionary/refusal (last visited May 30, 2014) (defining "refusal" as "an act of saying or <u>showing</u> that you will not do, give, or accept something" (emphasis added)). Peterson contends that Kopp lacked probable cause to arrest him for trespass because Peterson never refused to depart the bus stop. Rather, any delay in leaving the bus stop was due to disassembling his hookah and asking for Kopp's badge number. No officer, Peterson argues, could reasonably view those actions as a refusal to depart, especially when Peterson stated that he was leaving.

Nevertheless, we find that Kopp had at least arguable probable cause for the arrest based on Peterson's nonverbal conduct. Kopp asked Peterson and the others to leave the bus stop. Yet Peterson remained seated on the bicycle lockers until Kopp ultimately pulled him down. He never made a move to stand up, even during the time Kopp spent talking with one of the other men. Peterson states that he was disassembling his hookah, a process that takes about a minute. Nothing in the record suggests that Kopp knew how long this process should take; in his deposition Kopp explained he did not know hookahs could be disassembled until Peterson began doing so. Peterson also admits he stopped the disassembly process to take out his cell phone. Peterson states that Kopp "should have known that Mr. Peterson was not playing with his phone but was simply using his phone to make a memo or record Officer Kopp's badge number." However, this discounts the other surrounding circumstances: Peterson never moved to get off the lockers, remained seated during Kopp's conversation with the other individual, was still manipulating his hookah after the conversation ended, and then stopped disassembling it and pulled out a phone. Even if Kopp lacked probable cause, it was objectively reasonable for Kopp to interpret Peterson's actions as a refusal to leave the bus stop.

Peterson further contends that qualified immunity was inappropriate because Peterson's request for Kopp's badge number is protected speech and "cannot be used

as a basis for probable cause to arrest" Peterson.  See City of Hous. v. Hill, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").  Kopp claims he arrested Peterson for refusing to leave the bus stop, not for criticizing him or asking for his badge number.  Even if Kopp had an alternative motive for arresting Peterson, Kopp's "'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'"  Galarnyk v. Fraser, 687 F.3d 1070, 1075–76 (8th Cir. 2012) (quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). In other words, Kopp's alleged motive for the arrest cannot vitiate an otherwise lawful arrest.  See Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); see also Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1080 (8th Cir. 1990) (finding probable cause to arrest man for trespassing, despite officer also mistakenly thinking he could arrest him for verbally abusing the officer, because the protected speech was not the only basis justifying the arrest).  As discussed above, it was objectively reasonable for Kopp to believe Peterson was refusing to leave the bus stop, even before he asked for Kopp's badge number.  Consequently, we find Kopp had arguable probable cause to arrest Peterson and is entitled to qualified immunity from Peterson's unlawful arrest claim.

### B. Fourth Amendment Excessive Force

Peterson next argues that Kopp violated his Fourth Amendment right to be free from unreasonable seizures by using excessive force when arresting him. Chambers, 641 F.3d at 905 (noting the Fourth Amendment framework is appropriately applied to excessive force claims arising out of incidents occurring both before and shortly after arrest).  The Supreme Court has explained that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). An officer's use of force will violate the Fourth Amendment if it is not "objectively

reasonable." Id. at 397. Because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"—the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396–97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396 (quotation omitted). We look to the specific circumstances, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

All three of these factors identified in Graham weigh against Kopp and in favor of finding excessive use of force: Peterson was a non-fleeing, non-resisting, non-violent misdemeanant. See Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013). Nevertheless, finding Kopp's use of force unreasonable under the circumstances does not end the inquiry. As mentioned above, to overcome qualified immunity, Peterson must present sufficient facts to show not only (1) that the officer's conduct violated a constitutional right, but also (2) that the right was clearly established at the time of the alleged violation. Pearson, 555 U.S. at 232 (citing Saucier, 533 U.S. at 201).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Broadly speaking, "[t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." Small, 708 F.3d at 1005 (citing Henderson v. Munn, 439 F.3d 497, 503 (8th Cir. 2006)). That said, "[w]hile there is no requirement that 'the very action in question has previously been held unlawful,' [Peterson] can succeed only if earlier cases give [Kopp] fair warning that his alleged

-8-

treatment of [Peterson] was unconstitutional." Bishop v. Glazier, 723 F.3d 957, 961 (8th Cir. 2013) (quoting Johnson v. Carroll, 658 F.3d 819, 828 (8th Cir. 2011)).

The defendants argue, and the district court held, that even if pepper spraying Peterson was unreasonable under the circumstances, Kopp is entitled to qualified immunity because Peterson only suffered "de minimis injury" as a result. We have held that de minimis injury does not foreclose a claim of excessive force under the Fourth Amendment. Chambers, 641 F.3d at 906. Rather, "[t]he appropriate inquiry is 'whether the force used to effect a particular seizure is reasonable.'" Id. (quoting Graham, 490 U.S. at 396). However, until our June 2011 decision in Chambers, it was "an open question in [the Eighth Circuit] whether an excessive force claim require[d] some minimum level of injury." Chambers, 641 F.3d at 904. Because Peterson's arrest occurred two months before we decided Chambers, Kopp could have reasonably believed his actions were constitutionally permissible as long as they did not cause more than de minimis injury. In short, Kopp would be entitled to qualified immunity if Peterson's injuries were de minimis.

Though we agree the use of force here may have been unreasonable, and acknowledge that Peterson described being pepper sprayed as a painful experience, Peterson has not presented sufficient evidence that he suffered more than de minimis injury. Viewing the facts in the light most favorable to Peterson, he was sprayed directly in the face with pepper spray for just a few seconds, and suffered some pain, discomfort, and peeling under his eyes for several days after the incident. He did not seek medical care and his injuries resolved themselves without medical intervention. We do not make light of the use of pepper spray nor ignore the discomfort and skin irritation Peterson endured; nonetheless, we have not held that the use of pepper spray necessarily causes more than de minimis injury. Compare Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000) (finding, in the Eighth Amendment context, pepper spray injuries de minimis when the effects "cleared within 45 minutes" and "a medical examination the day after the incident revealed no lingering effects"), with Lawrence

v. Bowersox, 297 F.3d 727, 731 (8th Cir. 2002) (finding, in the Eighth Amendment context, pepper spray injuries more than de minimis when inmates were soaked in pepper spray while in their cells and had effects lasting for almost two years after the incident); cf. LaCross v. City of Duluth,  713 F.3d 1155, 1158 (8th Cir. 2013) (declining to "categorize[] the Taser as an implement of force whose use establishes, as a matter of law, more than de minimis injury," despite its tendency to "cause excruciating pain without lasting physical effects").  And here, Peterson has not presented evidence that the pepper spray caused more than temporary pain and discomfort; though a close case, we do not think this constitutes more than de minimis injury.  Compare Wertish v. Krueger, 433 F.3d 1062, 1066–67 (8th Cir. 2006) (finding de minimis "bruised ribs, a sore shoulder, and multiple abrasions to [the plaintiff's] face and head" that took six weeks to heal), and Andrews v. Fuoss, 417 F.3d 813, 815–18 (8th Cir. 2005) (finding de minimis a sheriff's blow that made plaintiff "see stars" and left her with a sore neck, arm, and shoulder as well as a headache and increased post-traumatic stress symptoms), with Small, 708 F.3d at 1005–06 (finding more than de minimis "three lacerations . . . that covered [the plaintiff's] face with blood"), and Samuelson v. City of New Ulm, 455 F.3d 871, 876 (8th Cir. 2006) (finding more than de minimis a shoulder injury requiring surgery and physical therapy, with lingering pain over a year after the incident).

## C. First Amendment Retaliation

Lastly, Peterson contends that Kopp violated his First Amendment right to free speech.  In both his Amended Complaint and Motion Opposing Summary Judgment, Peterson makes two distinct First Amendment retaliation claims: (1) Kopp arrested him in retaliation for engaging in protected speech; and (2) Kopp pepper sprayed him in retaliation for engaging in protected speech.  The district court only addressed Peterson's retaliatory arrest claim, granting qualified immunity because Kopp had at least arguable probable cause to arrest Peterson.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (citing Naucke v. City of Park Hills, 284 F.3d 923, 927–28 (8th Cir. 2002)). Under the third prong, a plaintiff must show that the retaliatory motive was a "substantial factor" or "but-for cause" of the adverse action. Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010). In other words, the plaintiff must show he was "singled out because of [his] exercise of constitutional rights." Id. (quotation omitted); see also Hartman, 547 U.S. at 256 ("[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution.").

In retaliatory arrest cases, we have identified a fourth prong: lack of probable cause or arguable probable cause. Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012) ("'Lack of probable cause is a necessary element of' a First Amendment retaliatory arrest claim." (quoting McCabe v. Parker, 608 F.3d 1068, 1075 (8th Cir. 2010))); McCabe, 608 F.3d at 1078–79 (finding plaintiffs' First Amendment claims moot because secret service agent had arguable probable cause for their arrest); accord Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998).

We agree that Kopp is entitled to qualified immunity on Peterson's retaliatory arrest claim because, as detailed above, Kopp had at least arguable probable cause for the arrest. However, Peterson also claims that Kopp pepper sprayed him in retaliation for criticizing Kopp and asking for his badge number. The defendants do not deny that criticizing a police officer and asking for his badge number is protected speech

-11-

under the First Amendment. Nor could they. "[C]riticism of public officials lies at the very core of speech protected by the First Amendment." Naucke, 284 F.3d at 927. They also do not deny that pepper spraying someone in the face "would chill a person of ordinary firmness." Revels, 382 F.3d at 876. Indeed, "'[t]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.'" Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003) (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) (holding that receiving several parking tickets totaling just $35.00 would chill a person of ordinary firmness)).

The defendants argue instead that there is no evidence upon which a reasonable jury could conclude that Kopp pepper sprayed Peterson—even in part—because of his protected speech. Revels, 382 F.3d at 876. "The causal connection is generally a jury question . . . [unless] the question is so free from doubt as to justify taking it from the jury." Id. (quotation omitted). The defendants claim causation is "free from doubt" in this case because there is only one reasonable conclusion from the record before us: Kopp pepper sprayed Peterson as a reasonable reaction to an escalating situation. We disagree. Taking the evidence in the light most favorable to Peterson, as we must for this summary judgment analysis, Peterson has presented affirmative evidence that Kopp pepper sprayed him in retaliation for criticizing him and asking for his badge number.

Moments before Kopp used the pepper spray, Peterson had asked for Kopp's badge number. "Temporal proximity is relevant but not dispositive." Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006); Kilpatrick v. King, 499 F.3d 759, 768 (8th Cir. 2007) (finding that timing "weighs against an inference of retaliatory intent" when nine months separated the protected speech and adverse action). Here, Peterson went beyond the timing of events, explaining that Kopp engaged in a conversation with him about his badge number. Kopp refused to give Peterson his badge number, responding, "[y]ou have no right to have my badge number." Kopp also

-12-

acknowledged during his deposition that he is reluctant to state his name and badge number due to the similarity between his last name and the shorthand, "cop," for police officer. As he put it, "all it does is aggravate [people] and make them even madder" because they believe he is lying.

The defendants justify the use of pepper spray by arguing that "Peterson's defiance inspired the other young men present to surround Kopp." We note first that there is a factual dispute about whether the others returned to the bus stop. Peterson's testimony is that they stayed 6–8 feet away, not participating in his interaction with Kopp. Moreover, Kopp did not pepper spray any of the other individuals—either before they left or after they allegedly returned. One of the other men argued with Kopp before leaving the bus stop, claiming he did not have to leave as it was public property. Yet Kopp did not pepper spray him for this "defiance," even though the surrounding circumstances were the same: he had been told to leave, had not done so, and other individuals were close by during the interaction (in fact closer, because Peterson was still sitting on the bicycle lockers during that conversation). A reasonable jury could conclude, based on this account, that Kopp pepper sprayed Peterson in retaliation for asking for his badge number, and Peterson's First Amendment right was clearly established at the time of the incident. Accordingly, Kopp is not entitled to summary judgment based on qualified immunity from Peterson's retaliatory use of force claim.

### III. Conclusion

For these reasons, we affirm the district court's grant of summary judgment for Peterson's Fourth Amendment claims and his retaliatory arrest claim, reverse the grant of summary judgment for Peterson's First Amendment retaliatory use of force claim, and remand for further proceedings consistent with this opinion. As there remains a federal claim, we also vacate the dismissal of Peterson's state law claims

and remand to the district court to once again decide whether to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a) & (c).

_____