# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2467
_____

Dr. Jayaram Bharadwaj

*Plaintiff - Appellant*

v.

Mid Dakota Clinic; Dr. Robert Tanous; Dr. Shelly Seifert; Dr. Vijay Rao; Dr. Marvin Lein; Dr. Steven K. Hamar; Board of Directors, Mid Dakota Clinic, P.C.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 16, 2019
Filed: April 3, 2020

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Dr. Jayaram Bharadwaj had trouble getting along with his coworkers. After being pushed out of his practice, he sued for racial discrimination and retaliation,

disability discrimination, whistleblower retaliation, and breach of fiduciary duty. The district court[1] dismissed each of these claims on summary judgment. We affirm.

I.

Dr. Bharadwaj, an oncologist born in India, was with Mid Dakota Clinic in Bismarck, North Dakota, for four-and-a-half years, the last two years as a shareholder. His tenure was rocky. He repeatedly quarreled with nurses and other doctors. Mid Dakota eventually became so concerned with his behavior that it sent him to Vanderbilt University for a fitness-to-practice evaluation. The evaluator did not question his ability to practice medicine but nevertheless recommended a three-week treatment program aimed at resolving his interpersonal difficulties.

Mid Dakota continued to consider its options while Dr. Bharadwaj attended the program. At a meeting with Mid Dakota's legal counsel, at least three of the twelve oncology nurses complained about Dr. Bharadwaj's behavior. In a memo to Mid Dakota's medical director summarizing the discussions at the meeting, counsel wrote: "the staff do not want to work with [him]." As it turned out, other doctors did not want to work with him either.

Once Dr. Bharadwaj returned, events unfolded quickly. Mid Dakota's board of directors suspended him. The CEO allegedly told him that the suspension was indefinite, that he would not be allowed to return to work under any circumstances, and that the clinic would make sure he lost his medical license if he fought it. A special shareholder meeting to decide his fate followed. He claims that, during the

---

[1]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota, now United States District Judge for the District of North Dakota.

meeting, board members tried to stack the vote against him by making false statements about his performance. He decided to resign rather than face a vote.

Dr. Bharadwaj eventually sued Mid Dakota, its board of directors, its CEO, and some of its individual directors for discrimination under Title VII of the Civil Rights Act and the Americans with Disabilities Act,[2] retaliation under Title VII and the False Claims Act, and breach of fiduciary duty under North Dakota law. The district court granted summary judgment to the defendants on each of these claims.

## II.

We review the district court's decision to grant summary judgment de novo.[3] *Tonelli v. United States*, 60 F.3d 492, 494 (8th Cir. 1995). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (citation omitted).

## A.

We begin with Dr. Bharadwaj's discrimination claims. He does not have

---

[2]The disability-discrimination claim is based on the allegation that Mid Dakota "regarded" him as having a "mental impairment" and then discriminated against him. 42 U.S.C. § 12102(1)(A), (C).

[3]Dr. Bharadwaj notes that parts of the district court's order appear to have been pasted from Mid Dakota's summary-judgment brief. Because our review is de novo, this has no bearing on our analysis. *See Jensen v. Solvay Chems., Inc.*, 625 F.3d 641, 651 (10th Cir. 2010).

direct evidence of discrimination,[4] so we evaluate them under the *McDonnell Douglas* burden-shifting framework. *See Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 937 (8th Cir. 2019) (Title VII); *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1153–54 (8th Cir. 2013) (ADA). Even if he has established a prima-facie case, Mid Dakota has offered a legitimate nondiscriminatory reason for its actions: his inability to get along with others.

Dr. Bharadawaj argues that Mid Dakota's reason was a pretext for discrimination. *See Beasley*, 933 F.3d at 938; *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014). His evidence of pretext falls into three broad categories, but in the end, none of it creates a triable issue of fact.

The first category is shifting-explanations evidence. According to Dr. Bharadwaj, Mid Dakota gave varying explanations for its actions over time. Although this type of evidence, if it existed, could establish pretext, *see Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874–75 (8th Cir. 2010), Mid Dakota never wavered from its view that his interpersonal difficulties were the central concern. To be sure, he had other problems too, but Mid Dakota never shifted its focus from his main one, even if it sometimes used different words to describe it.

The second category is false-explanations evidence. Dr. Bharadwaj says that Mid Dakota's explanations, even if consistent, were false. "The falsity of a

---

[4]For the disability-discrimination claim, Dr. Bharadawaj claims to have direct evidence because he says that the president of Mid Dakota once said that he was "paranoid" and suffered from a "psychiatric illness." But he also admits that she knew he did *not* have psychiatric issues, so there is no way her statements could be direct evidence of discrimination under a regarded-as-disabled theory. *See* Br. of Appellant at 25; *see also Webb v. Mercy Hosp.*, 102 F.3d 958, 960 (8th Cir. 1996) ("An employer's knowledge that an employee exhibits *symptoms* which may be associated with an impairment does not necessarily show the employer regarded the employee as disabled." (emphasis added)).

nondiscriminatory explanation [can] support a finding of pretext," *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 794 (8th Cir. 2011), but once again, his evidence falls short. He disputes a number of *details* about specific incidents with other employees, including who started them. But the evidence does not rebut Mid Dakota's primary rationale for taking action: his inability to get along with others. Even his counsel conceded at oral argument that the evidence showed that he had difficulty in this area. Oral Arg. at 8:43–8:50 ("I don't think that that's unfair to say he had interpersonal difficulties with people there."). If so, Mid Dakota's explanation was not false, and it had the right to discipline him regardless of who was at fault in each incident. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) ("The employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." (brackets and citation omitted)).

The third category is others-were-treated-better evidence. He claims that Mid Dakota treated other, similarly situated doctors more favorably. This evidence fails for a different, more obvious reason. Dr. Bharadwaj cannot identify anyone else who "engaged in the same conduct without any mitigating or distinguishing circumstances." *Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (citation omitted). Although others had problems, as he points out, none had them to the point that other doctors refused to work with them.

Dr. Bharadawaj has not mustered sufficient evidence of pretext. So on these claims, he was not entitled to get past summary judgment.

B.

Dr. Bharadwaj's retaliation claims come next. These claims, brought under Title VII and the False Claims Act, allege that he was forced to resign for engaging

in statutorily protected activity. Under Title VII, he claims that his complaints about racially charged comments by the lead oncology nurse were the cause. And under the False Claims Act, the alleged cause was his decision to disclose the fraudulent billing practices of another doctor to clinic management. Once again, a lack of evidence dooms his claims, this time because there is no proof that either action was the reason Mid Dakota pushed him out.

On the first claim, he argues that Mid Dakota disciplined him for complaining about racial slurs that anyone would find offensive. The lead oncology nurse reportedly called him "Achmed the Terrorist" more than once and told him that no one could understand him because he "speaks Hindu." After Dr. Bharadawaj reported the racial harassment to clinic administrators, he claims, Mid Dakota suspended him and later forced him to resign.

No matter how offensive the nurse's comments may have been, Dr. Bharadwaj's retaliation claim depends on Mid Dakota's response to his *reporting* of them, rather than the content of the statements themselves.[5] Specifically, Title VII's anti-retaliation provision prohibits Mid Dakota from engaging in discrimination "*because* [an employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (emphasis added). One element of this type of claim is causation: any adverse employment action must have been *motivated by* Mid Dakota's "desire to retaliate" against him for reporting discriminatory and harassing behavior. *Wright v. St. Vincent Health Sys.*, 730 F.3d

---

[5]Indeed, Dr. Bharadwaj has been clear that he is *not* raising a hostile-workplace or other similar claim based on the nurse's comments. Reply Br. at 32–33. Instead, he "recounts her comments to explain the basis for his complaints of race discrimination to Mid Dakota administrators," which he says motivated the retaliation. *Id.* at 33.

732, 737–38 (8th Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

Dr. Bharadwaj's theory is that if Mid Dakota did not force him to resign because of his race or a disability, then perhaps it did so as retaliation for reporting the nurse's comments.  He has no direct evidence of retaliation, so the *McDonnell Douglas* burden-shifting framework is front and center here too.  *See Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017).  Even if he can establish a prima-facie case, he once again lacks evidence of pretext.  His primary evidence is proof of a so-called "pattern," except his pattern consists of actions taken against only one other doctor.  The doctor in question, Dr. Robert Roswick, complained in a letter that Dr. Bharadwaj was treated more harshly than others because of his race.  It is true, as Dr. Bharadwaj argues, that board members admitted that they fired Dr. Roswick in response to his comments.  A jury later awarded Dr. Roswick more than one million dollars in damages on *his own* retaliation claim.

Still, Dr. Bharadwaj cannot use Dr. Roswick's strong retaliation claim to bootstrap his weak one.  To be sure, we sometimes allow plaintiffs to introduce evidence of discrimination against other employees to bolster their own claims.  *See, e.g.*, *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017).  But the question here is not admissibility, but rather whether the evidence could lead a reasonable jury to conclude that Mid Dakota's strong legitimate nondiscriminatory justification for its actions was a pretext for retaliation.  *See Donathan*, 861 F.3d at 739–40 (explaining that on a "fully developed summary judgment record," the plaintiff's obligation to demonstrate pretext "merges" with the requirement to show that "an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action").  In our view, the answer is no.

The claims are just too different for a reasonable jury to conclude otherwise without resorting to speculation.  Dr. Roswick wrote a letter to clinic management complaining about what he perceived to be unfair treatment of a minority colleague.

Dr. Bharadwaj complained about something different: racial slurs that another employee directed at him. Even if Mid Dakota retaliated against Dr. Roswick for writing the letter, this does not mean that it also retaliated against Dr. Bharadwaj for complaining about something else. *See Barber*, 656 F.3d at 801 (explaining that to survive summary judgment, the plaintiff must offer "sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy" (alterations in original) (citation omitted)). Retaliation against one employee is insufficient, standing alone, to prove retaliation against another employee when the underlying activity is so different. *Cf. id.* at 795 (explaining that another employee's allegation of discrimination is insufficient, standing alone, to show pretext). And Dr. Bharadwaj points to nothing more in support of his Title VII retaliation claim.

Dr. Bharadwaj does not have much support for his other retaliation claim either. The causation standard under the False Claims Act is even *more* stringent: "the retaliation [must be] motivated *solely* by . . . protected activity." *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 932–33 (8th Cir. 2002) (emphasis added). There is simply no evidence, direct or otherwise, that his decision to report the allegedly fraudulent billing practices of a colleague caused—much less solely caused—Mid Dakota to force him out.

C.

We have one final claim to consider, this one under state law. According to the North Dakota Business Corporation Act, a court may order equitable relief to prevent the oppression of minority shareholders. It provides, in relevant part, as follows:

> 2. A court may grant any equitable relief it deems just and
> reasonable in the circumstances[:]
> . . .

-8-

b. In an action by a shareholder when it is established that:

. . .

(2) The directors or those in control of the corporation have acted *fraudulently or illegally* toward one or more shareholders *in their capacities as shareholders or directors* of any corporation or as officers or employees of a closely held corporation; [or]

(3) The directors or those in control of the corporation have acted in a manner *unfairly prejudicial* toward one or more shareholders *in their capacities as shareholders or directors* of a corporation that is not a publicly held corporation or as officers or employees of a closely held corporation;

. . .

N.D. Cent. Code § 10-19.1-115(2) (emphasis added).

It is undisputed that Mid Dakota is not a closely held corporation, *see id.* § 10-19.1-01(11), so the statute provides no protection to Dr. Bharadwaj in his capacity as an employee. *Cf. Kortum v. Johnson*, 755 N.W.2d 432 (N.D. 2008) (analyzing a claim brought by an employee of a closely held corporation). Rather, it would allow for equitable relief only if "those in control of" Mid Dakota have acted "fraudulently or illegally" or "in a manner unfairly prejudicial" toward him in his "capacit[y] as [a] shareholder[]." N.D. Cent. Code § 10-19.1-115(2).

Yet the allegedly oppressive actions Dr. Bharadwaj has identified were all taken against him in his capacity as an *employee*. He is trying to raise a wrongful-discharge claim under the guise of a shareholder-oppression action, essentially because he happens to be a shareholder too. The problem, of course, is that, under North Dakota law, he could not have brought a wrongful-discharge claim directly because he is an at-will employee. *See Jose v. Norwest Bank N.D., N.A.*, 599 N.W.2d 293, 298 (N.D. 1999) (explaining that an employer can generally terminate an at-will employee "with or without cause," unless doing so would violate public policy). He cannot bring one indirectly as a shareholder either.

## III.

We accordingly affirm the judgment of the district court.

_____