# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-3530

———————————————

Derek Laney

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri; Scott Boyher, in his individual and official capacities; Lt. Col. Lawrence O'Toole, in his individual capacity; Director Charlene Deeken, in her individual capacity

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: September 21, 2022
Filed: January 6, 2023

————————

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.

————————

STRAS, Circuit Judge.

Derek Laney argued with a police officer during a protest in downtown St. Louis. Lieutenant Scott Boyher saw the confrontation and, fearing for the other officer's safety, pepper sprayed him. Although Laney alleges that the force used

was both excessive and retaliatory, we affirm the district court's[1] decision to grant qualified immunity.

## I.

Protests broke out following a former police officer's acquittal on murder charges. The crowd converged into a single spot near the police academy, which became the location of a "standoff" with riot police. "[T]o de-escalate the situation," the plan was to bus the riot police away. The protestors, however, had other ideas. They surrounded the buses and started throwing rocks and water bottles.

Enter the Bicycle Response Team. To get the buses out, officers spread out along both sides of the exit route and set up a makeshift bicycle barricade to keep the crowd at bay. For protestors who tried to remain behind the barricade, officers used their bicycles to push them out of the way.

Laney thought the decision to use bicycles to push women "was egregious and abusive," so he walked over and complained to an officer. When the officer spotted Laney "rapidly approach[ing]," he "tried to push him" back with his bicycle. Laney responded by "put[ting] [his] arms out" to avoid being hit and stepped sideways. The officer then advanced toward him, which caused Laney to back up.

Lieutenant Boyher was almost half a block away when he saw what he thought was a "fight[]" between them. To stop the potential "assault[]" and keep Laney from "interfering with" the team's efforts to get the buses out, he ran over and pepper sprayed him. The act had its intended effect: Laney retreated and moved away from the barricade.

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

These actions did not sit well with Laney, who brought excessive-force and First Amendment retaliation claims against Lieutenant Boyher and a municipal-liability claim against the City of St. Louis. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The complaint also included an assortment of state claims. The district court dismissed Laney's federal claims at summary judgment and declined to exercise supplemental jurisdiction over what remained.

II.

We review the district court's decision to grant summary judgment de novo. *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc). "Summary judgment was appropriate if the evidence, viewed in the light most favorable to [Laney], shows no genuine issue of material fact exists and the defendants were entitled to judgment as a matter of law." *McManemy v. Tierney*, 970 F.3d 1034, 1037 (8th Cir. 2020) (brackets and citation omitted).

As the district court recognized, the federal claims against Lieutenant Boyher depend on qualified immunity. To determine whether it applies, we consider two questions. First, did he violate a constitutional right? Second, was the right clearly established? *Morgan*, 920 F.3d at 523. If the answer to either question is "no," the claims end here. *See id.* (explaining that we may answer the questions in either order).

A.

The answer to the first question dooms Laney's excessive-force claim. His view is that the use of pepper spray was "objectively unreasonable" under the circumstances. *Johnson v. McCarver*, 942 F.3d 405, 411 (8th Cir. 2019). Lieutenant Boyher, by contrast, believes he acted reasonably by assisting an officer in need.

Whether an officer has used excessive force depends on "the facts and circumstances confronting [him], without regard to [his] underlying intent or

motivation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The overarching standard is reasonableness, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Included in the calculus is the fact that "police officers are often forced to make split-second judgments," especially when someone may "pose[] an immediate threat to the safety of . . . others." *Id.* at 396–97.

Lieutenant Boyher faced a fast-moving situation that, from start to finish, lasted less than 15 seconds. During what became an unruly protest, Laney entered a police barricade and "rapidly approach[ed]" officers from behind. When one of them blocked Laney's advance, he responded by "put[ting] [his] arms out" toward the officer's bicycle. A reasonable officer watching these events unfold could have viewed Laney's actions as "immediate[ly] threat[ening]." *Graham*, 490 U.S. at 396; *see Fischer v. Hoven*, 925 F.3d 986, 989 (8th Cir. 2019).

It makes no difference that video footage depicts Laney slowly backing away from the other officer. Only a few feet separated them. And Lieutenant Boyher had an obscured view as he approached from behind. So he could have reasonably believed, based on what he could see, that the situation remained dangerous and that someone needed to drive Laney away from the police barricade. *See Johnson*, 942 F.3d at 411; *see also Hosea v. City of St. Paul*, 867 F.3d 949, 958–59 (8th Cir. 2017) (noting that "partial compliance" may constitute "passive resistance" that "favors the . . . use of force").

Considering the perceived danger, a short burst of pepper spray was a reasonable response under the circumstances. *See Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (recognizing that "the use of pepper spray . . . was objectively reasonable" when the officer reasonably believed "that he was in immediate danger"). We recently concluded that an officer reasonably used pepper spray to remove a noncompliant nightclub patron, *see Johnson*, 942 F.3d at 411, so it stands to reason that an officer can reasonably use it to drive an unruly protestor away from a police line. Indeed, we held in another case that the use of non-lethal

-4-

force against a protestor who approached a police skirmish line was reasonable under the circumstances. *See White v. Jackson*, 865 F.3d 1064, 1079–80 (8th Cir. 2017). We reach the same conclusion here.

Laney's view is different. His position is that the use of *any* force against him was unreasonable. *See N.S. v. Kan. City Bd. of Police Comm'rs*, 933 F.3d 967, 970 (8th Cir. 2019) (requiring courts to view the facts through a "plaintiff-friendly" prism). As he tells it, two disputed facts should stand in the way of summary judgment: the possibility that he touched the bicycle on accident (or not at all) and that Lieutenant Boyher could not have seen him do it.

Neither fact, even if true, matters. *See Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (defining a "material" fact as one that "may 'affect the outcome'" (citation omitted)). Whether Laney intended to touch the bicycle "does not bear on how [a] reasonable officer[] would have interpreted [his] behavior." *Fischer*, 925 F.3d at 989 (citation omitted). And even if he never touched it, video footage confirms that a reasonable onlooker could have thought he did. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (taking "the facts in the light depicted by the videotape"). Besides, Lieutenant Boyher did not need to *actually* see Laney touch the bicycle once he spotted him squaring off with another officer. By then, he had seen enough to reasonably conclude that he posed a threat. *See Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010) ("[T]here can be no doubt that officers are permitted to use force when their safety is threatened.").

The remainder of Laney's arguments are just general complaints about Lieutenant "Boyher's true motivations, intentions, and testimonial fabrications." None of these arguments make any difference because "evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force." *Graham*, 490 U.S. at 397.

B.

Motive, on the other hand, is central to Laney's retaliation claim. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). He argues that Lieutenant Boyher used pepper spray in response to his criticism of the Bicycle Response Team's treatment of women.

There is no question that the First Amendment protects Laney's comments. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (discussing the "protected[-]activity" requirement). Nor is there any dispute that the use of pepper spray "would chill a person of ordinary firmness" from speaking out. *Id.* (considering the "adverse[-]action" requirement). The debate here is over the but-for causation requirement: would the use of pepper spray have occurred "absent the retaliatory motive"?[2] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

On this record, we conclude that the answer is "yes." Even viewing the facts in a light most favorable to Laney, causation is missing. As Laney acknowledges, Lieutenant Boyher "was not even in the area" when he criticized the Bicycle Response Team. Nor did Laney "have any interaction with him" during the mere seconds between the beginning of the incident and the use of pepper spray. Given that Boyher was out of earshot until the end, Laney's criticism could not have played a role in the decision to use force. *See id.* (requiring the plaintiff to show that "the adverse action . . . would not have been taken absent the [defendant's] retaliatory

---

[2]To the extent *Peterson* suggests that a "substantial factor" is enough, even in the absence of but-for causation, 754 F.3d at 602, it is inconsistent with *Nieves* and no longer good law, 139 S. Ct. at 1722 (requiring but-for causation for First Amendment retaliation claims). The same goes for our other cases that apply the substantial-factor test. *See, e.g.*, *Garcia v. City of New Hope*, 984 F.3d 655, 669–70 (8th Cir. 2021); *Hoyland v. McMenomy*, 869 F.3d 644, 657 (8th Cir. 2017); *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

motive"); *see also Auer v. City of Minot*, 896 F.3d 854, 859 (8th Cir. 2018) (explaining that the plaintiff could not have been fired for reporting discrimination when "she never made [such] a report").

Laney switches gears with his backup argument. Even if his specific criticism of the Bicycle Response Team played no role, he says, his participation in the protest must have. But the problem, once again, is a lack of causation. There is, after all, an "obvious alternative explanation" for the use of force: Lieutenant Boyher saw Laney behind the barricade in a standoff with another officer. *Auer*, 896 F.3d at 860–61. In his view, there was a risk of further violence, not to mention the possibility that Laney may have already been assaulting the other officer. *See* Mo. Rev. Stat. § 565.056.1(3), (6). Use of non-lethal force, like pepper spray, is exactly how we "would expect" an officer to diffuse what had become a volatile situation. *Mitchell v. Kirchmeier*, 28 F.4th 888, 897 (8th Cir. 2022). Under these circumstances, no reasonable jury could find that retaliatory animus caused Boyher to use force. *See, e.g.*, *id.* at 896–97 (holding that a protestor failed to state a plausible retaliation claim because he "stood in [the officers'] way and ignored a countdown warning").

Laney also urges us to consider whether there is a pattern to Lieutenant Boyher's behavior. *Cf. Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1136 (8th Cir. 2020) (discussing the use of "pattern" evidence in the employment-discrimination context). The argument is that he repeatedly used force without cause that day, which creates a reasonable inference that the same thing must have happened here.

Most of the other incidents shed little light on Lieutenant Boyher's motives because they include no evidence of retaliation. *See DePriest v. Milligan*, 823 F.3d 1179, 1184 (8th Cir. 2016) (explaining that a plaintiff must offer "sufficient probative evidence" to survive summary judgment, not "mere speculation, conjecture, or fantasy" (citation omitted)). The only possible exception involves another lawsuit brought against Boyher. *See Dreith v. City of St. Louis*, — F.4th — ,

2022 WL 17685421 (8th Cir. 2022). In that case, we *assumed* that, under a plaintiff-friendly view of the facts, he "assaulted [one of the other protestors] without warning and without cause." *Id.* at \*2.

Even so, Laney "cannot use [a] strong[er] retaliation claim to bootstrap his weak one." *Bharadwaj*, 954 F.3d at 1136. The incident in *Dreith* occurred at a different time, in a different place, and involved different behavior. It is, in other words, "just too different" to create a jury issue on causation here. *Id.* at 1137; *cf. Nieves*, 139 S. Ct. at 1723–24 (describing the "causal inquiry" in retaliatory-arrest cases as "complex" because officers "must make 'split-second judgments'" based in part on "the content and manner of a suspect's speech" (quoting *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018))).

## III.

Our conclusion that Lieutenant Boyher did not violate Laney's First or Fourth Amendment rights also forecloses his constitutional claims against the City of St. Louis. As we have explained, "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . municipal liability." *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007).

## IV.

We accordingly affirm the judgment of the district court.

———————————————