# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-1547
_____

Patricia Walker-Swinton

*Plaintiff - Appellant*

v.

Philander Smith College; Roderick Smothers, Sr., Dr., President, in his official
capacity; Zollie Stevenson, Jr., Dr., Vice-President, Academic Affairs, in his
official capacity

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: December 13, 2022
Filed: March 13, 2023
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Philander Smith College fired Patricia Walker-Swinton after she referred to a
student as "retarded" for using a cellphone during class. She sued for sex
discrimination, retaliation, and breach of contract. After granting summary

judgment to the college on the first two claims, the district court[1] declined to exercise supplemental jurisdiction over the third. We affirm.

## I.

Walker-Swinton taught English as a nontenured faculty member. During class one day, she spotted John Doe using his phone and took his quiz away. After he left the classroom in frustration, she went on to "lectur[e] the students on appropriate conduct." She explained that "no instructor would let anyone use their damn phone during a fuckin quiz or test" and that "it was insane and retarded for anyone to think it was ok." Doe's girlfriend then left the class and told him that Walker-Swinton had called him a "fucking retard."

Walker-Swinton's statement did not go over well with Doe. He returned to the classroom, dared her to call him that "to [his] fucking face," and referred to her as "all types of bitches." Before the disagreement escalated further, students separated them.

After class ended, the situation turned from bad to worse. Walker-Swinton's nephew encountered Doe in the cafeteria and asked him, "what's this shit I heard you was saying about my aunt[?]" Moments later, this standoff turned physical: he and his friends punched and kicked Doe until others intervened.

The college opened an investigation. When questioned, Walker-Swinton omitted some key facts, including that one of Doe's attackers lived with her and that she was with each of them shortly before the attack. Other missing facts included her request for one student to write that Doe had "rushed into the class like he was about to attack [her]" and for others to "point out" that he had "call[ed] [her] a bitch."

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

Her efforts backfired. Coaching students on "their witness statements" was one reason why the college fired her. The others were her "us[e] [of] a disability-related slur" in class and her "fail[ure] to disclose material information" about her relationship to the students who attacked Doe. In the end, the college concluded she "lack[ed] the appropriate judgment" to teach.

Upset by her dismissal, Walker-Swinton sued under Title VII and the Arkansas Civil Rights Act for discrimination and retaliation. The district court granted summary judgment to the college on those two claims and declined to exercise supplemental jurisdiction over a third, a breach-of-contract claim. She challenges these rulings on appeal.

## II.

We review the decision to grant summary judgment de novo. *See Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

## A.

According to Walker-Swinton, the college fired her "because of" her sex. 42 U.S.C. § 2000e-2(a)(1). She lacks direct evidence of discrimination, so she must prove her claim circumstantially, through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1062 (8th Cir. 2020).

Even if we assume that Walker-Swinton has established a prima-facie case of discrimination, the college can still offer a legitimate, nondiscriminatory reason for its decision. *See Couch v. Am. Bottling Co.*, 955 F.3d 1106, 1108 (8th Cir. 2020). It offers several: "using a disability-related slur," "fail[ing] to disclose material

information" during the investigation, and coaching students on what to put "in their witness statements." For her part, Walker-Swinton believes the college's reasons are nothing more than a smokescreen for discrimination. She suggests three reasons why, but none creates a genuine issue of material fact. *See id.* at 1108–09 (emphasizing that the plaintiff bears the burden of establishing pretext).

The first is her false-explanation theory. *See Bharadwaj*, 954 F.3d at 1135 (noting that "[t]he falsity of a nondiscriminatory explanation can support a finding of pretext" (citation and brackets omitted)). She acknowledges that the college's anti-harassment policy prohibits faculty from intentionally "insult[ing] or stigmatiz[ing] an individual or *an identifiable group* of individuals on the basis of . . . disability." (Emphasis added). But she claims that she never violated the policy because Doe did not have a disability, and she merely used the word "retarded . . . in an instructional manner to demonstrate to the remaining urban college students how not to conduct themselves." The anti-harassment policy, in other words, could not have played a role in her firing.

There was nothing false, however, about the college's belief that she violated the policy. By its terms, it covers insulting or stigmatizing language directed at "identifiable group[s]," like disabled students. It does not matter whether Doe himself had a disability if her words stigmatized or insulted the entire group.[2] The fact is that Walker-Swinton's violation of the policy provided reason to fire her "regardless of who was at fault" for the classroom incident. *Id.*; *see Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012) ("[V]iolating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." (citation omitted)).

---

[2]Given that Walker-Swinton's violation of the college's anti-harassment policy had little to do with whether Doe himself had a disability, there was no reason to give her access to his student records during discovery. *See* Fed. R. Civ. P. 26(b)(1) (authorizing the discovery of "relevant" material "proportional to the needs of the case").

The second relies on others-were-treated-better evidence. *See Bharadwaj*, 954 F.3d at 1135. To prevail, Walker-Swinton had to identify a man who "engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (citation omitted). The first possibility is the college president, who declared that he would "put [the] asses" of unruly students "on a bus" home during freshman orientation. The other is a member of the college's leadership team, who told faculty that "[t]utors are not here to cover [their] asses!" Both used coarse language, to be sure, but neither went as far as Walker-Swinton did. Her comments, made *during* class, singled out a vulnerable group of students in a negative and demeaning way. *See id.*; *Phillips v. Union Pac. R.R. Co.*, 216 F.3d 703, 706 (8th Cir. 2000).

The third is a botched-investigation theory. "[A]n employer's [flawed] investigation of an employee in a protected group can support a claim of discriminatory intent." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 997 (8th Cir. 2011). But cutting corners hardly supports a finding of pretext when there was not much to investigate. Walker-Swinton made her derogatory comments in front of a classroom full of students, and there was no doubt about what she said. Besides, the procedures she claims the college failed to follow applied to her own complaint against Doe, not its handling of her termination, so any inference of discriminatory intent is especially weak here. The point is that it was reasonable for the college to conclude, based on "[its] business judgment," that no further investigation was necessary. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 863 (8th Cir. 2009).

Walker-Swinton has not put forward sufficient evidence of pretext. So summary judgment marks the end of the road for her sex-discrimination claim.[3]

---

[3]The same stumbling block stands in the way of Walker-Swinton's retaliation claim. *See Couch*, 955 F.3d at 1108–09 (applying the *McDonnell Douglas* burden-shifting framework to a retaliation claim).

B.

Walker-Swinton also believes that the college created a hostile work environment. To prevail, she had to experience severe and pervasive harassment, enough "to alter the conditions of [her] employment." *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *see* 42 U.S.C. § 2000e-2(a)(1) (barring discrimination in the "terms, conditions, or privileges of employment[] because of . . . sex"). "To clear the high threshold of actionable harm, [Walker-Swinton] ha[d] to show that 'the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult.'" *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "More than a few isolated incidents are required." *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 573 (8th Cir. 1997).

All she has is a few scattered incidents. The first was the one involving Doe. The second involved "threatening looks" he allegedly cast in her direction when their paths later crossed on campus. And the third occurred when the college's attorney "snatched" *her* phone away during a meeting. The allegations here, both "individually [and] collectively," are nowhere close to "severe or pervasive enough . . . to alter a term, condition, or privilege of her employment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999); *see Blomker v. Jewell*, 831 F.3d 1051, 1058–59 (8th Cir. 2016) (collecting cases). After all, if "'vile or inappropriate' behavior" is not necessarily actionable, then these "isolated incidents" cannot get Walker-Swinton to a jury either. *Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 799 (8th Cir. 2021) (citation omitted).

Besides, Walker-Swinton's actions matter too. *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892–93 (8th Cir. 2005); *see also Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021) (looking to "the totality of the circumstances" in assessing whether there was a hostile work environment (citation omitted)). Doe only lashed out once she used derogatory language to describe what he had done. And if there

-6-

were glares, they arose out of their profanity-laden standoff and her nephew's role in the cafeteria attack. Even if the conditions were intolerable, in other words, her own role in provoking these incidents undermines the claim that *the college* created a workplace full of "discriminatory intimidation, ridicule, and insult." *Duncan*, 300 F.3d at 934 (citing *Harris*, 510 U.S. at 21); *see Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 696 (8th Cir. 2021) (emphasizing that the employer's conduct must have "caused the harassment or led to the continuation of the hostile work environment" (citation omitted)).

C.

Walker-Swinton's unequal-pay claim runs into a different snag: a failure to exhaust. *See Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 534–36 (8th Cir. 2018) (discussing Title VII's exhaustion requirement). She now complains that she had been shorted for years: the college "fail[ed] to pay" for her services as "Interim Division Chair from 2014–2017"; for tutoring work she did in 2015, 2016, and 2017; and for coaching "[p]ossibly as early as 2012." Her charge, filed in August 2018, said something different: it listed April 1, 2018, as the "earliest" date "discrimination took place." (Emphasis omitted).

For any pre-2018 claims, the charge came too late, even if it alleged that she faced discrimination "[t]hroughout [her] employment." *See* 42 U.S.C. § 2000e-5(e)(1) (requiring a charge to be filed within 180 days of "the alleged unlawful employment practice"); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002). It also suffered from a lack of specificity: there were no allegations that the discrimination took the form of unequal pay. And even if there had been, she did not check the form's "continuing[-]action" box. (Emphasis omitted). Older claims remain unexhausted, in other words, because they are not "like or reasonably related to the substance of the allegations in the administrative charge." *Bissada v. Ark. Child.'s Hosp.*, 639 F.3d 825, 830 (8th Cir. 2011) (citation omitted); *see Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011) ("[The

plaintiff]'s EEOC charge about an alleged failure to promote involving a different position in a different year was insufficient to exhaust his administrative remedies.").

Later claims suffer from a different problem. The district court concluded that "nothing in the record permits a reasonable inference that [she] complained about her compensation after April 1, 2018." And even if there were something in the record, her opening brief fails to identify it. *See Gareis v. 3M Co.*, 9 F.4th 812, 819 n.4 (8th Cir. 2021) ("Issues not raised in a party's opening brief are waived." (citation omitted)). Any way you cut it, Walker-Swinton's unequal-pay claim cannot survive summary judgment.

D.

Two loose ends remain. One is Walker-Swinton's discrimination claim under Arkansas law. There is no mention of why it should survive summary judgment in her opening brief, so we will not address it. *See id.* The other is her Arkansas breach-of-contract claim, which was dismissed without prejudice. Once her federal claims were gone, the district court had no obligation to exercise supplemental jurisdiction over it. *See* 28 U.S.C. § 1367(c)(3); *see also McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (observing that "judicial economy, convenience, fairness, and comity" typically point toward that result (citation omitted)).

III.

We accordingly affirm the judgment of the district court.

_____