# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 17-3705

———————————————————

Matthew Wade Parrish

*Plaintiff - Appellant*

v.

Jason Dingman, Individually and in his Official Capacity as Hamilton County Jailer; Dennis Hagenson, Individually and in his Official Capacity as Hamilton County Sheriff; Hamilton County, Iowa

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

——————————

Submitted: October 17, 2018
Filed: January 2, 2019

——————————

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

——————————

BENTON, Circuit Judge.

Matthew Wade Parrish sued jailer Jason D. Dingman, Sheriff Dennis Hagenson, and Hamilton County under 42 U.S.C. § 1983 and Iowa law. The district

court[1] granted qualified immunity to Dingman and summary judgment to the defendants. ***Parrish v. Dingman***, 2017 WL 5560280 (N.D. Iowa Nov. 17, 2017). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

An Iowa state trooper stopped Parrish at a checkpoint. After testing for sobriety and finding marijuana in the vehicle, police transported him to the Hamilton County Jail. Dingman conducted the booking procedure.

During booking, Parrish told Dingman he had several physical impairments from breaking his right femur and right arm in a motorcycle accident five years earlier. Dingman had heard about the accident and knew Parrish had significant injuries. Parrish walked with a limp. He told Dingman that he wears prescription glasses for double vision and special orthotic shoes because his right leg is shorter than his left. Dingman let him keep his shoes and glasses in the holding cell. Parrish also asked for an isolated cell due to his physical impairments. After completing intake, Dingman gave Parrish a mattress to make him more comfortable and escorted him to the male holding cell. During booking and intake, Parrish was cooperative.

Surveillance video captured what happened next. Parrish walked through the cell door holding the mattress in front of his chest. Dingman was behind him. Seeing another inmate in the cell, Parrish turned to face Dingman and asked again for an isolated cell. Dingman shook his head no. Parrish then stepped forward toward the open cell door "to get the doorway open to get [Dingman's] answer." The mattress protruded through the cell door.

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

Dingman believed Parrish was attacking him and trying to leave the holding cell. He was concerned Parrish could use the mattress as a shield. Dingman then stepped into the cell, pushed Parrish into the wall, leveraged him to the floor with his hands on Parrish's arm and neck, and handcuffed him. Parrish's right wrist was swollen and bruised from the handcuffs. He later received chiropractic treatment for lower back pain and four injured ribs. He also sought mental health treatment.

Parrish sued Dingman, Hagenson, and Hamilton County under federal and state law. The officers and the County invoked qualified and statutory immunity. The district court granted them summary judgment. Parrish appeals his claims against Dingman for excessive force and assault and battery, and his claim against the County for respondeat superior liability.

II.

This court reviews de novo the grant of summary judgment on the basis of qualified immunity, "viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). Qualified immunity shields Dingman from liability in this § 1983 action unless Parrish can show: (1) that Dingman "violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), *quoting* **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982).

Parrish's excessive-force claim is governed by the Fourth Amendment's objective reasonableness standard. *Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process."). To prove a constitutional violation, Parrish must show that Dingman's use of force was not objectively reasonable under the particular

circumstances. ***Brown v. City of Golden Valley***, 574 F.3d 491, 496 (8th Cir. 2009). Objective reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." ***Graham v. Connor***, 490 U.S. 386, 396 (1989). In determining objective reasonableness, a court may look to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." ***Zubrod v. Hoch***, 907 F.3d 568, 577 (8th Cir. 2018), *quoting **Kingsley v. Hendrickson***, 135 S. Ct. 2466, 2473 (2015). A court must also consider the "legitimate interests in managing a jail" and give "deference to policies and practices needed to maintain order and institutional security." ***Kingsley***, 135 S. Ct. at 2474.

Parrish argues the use of any force was unreasonable because no reasonable officer would think he was actively resisting or posing any threat—he was unarmed, had significant physical impairments, and was cooperative during booking. *See **Brown***, 574 F.3d at 499 ("[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public."). He contends this case is similar to *Shekleton*, where the use of force against a suspect with known disabilities was not objectively reasonable. ***Shekleton v. Eichenberger***, 677 F.3d 361, 366 (8th Cir. 2012). *Shekleton*, however, is factually distinguishable. The suspect was not in jail and posed no threat to the officer. ***Id.*** The officer used a taser—more intrusive force than Dingman used—despite knowing that Shekleton's physical disabilities prevented him from complying with orders to place his hands behind his back. ***Id.***

Parrish was in jail. Jailers like Dingman have an important interest in maintaining order and institutional security within the jail. *See **Kingsley***, 135 S. Ct. at 2474. After Dingman refused to give him an isolated cell, Parrish stepped forward toward the open cell door. A reasonable officer could believe Parrish was trying to

leave the holding cell, justifying force to maintain order and security in the jail. *Id.* By holding the mattress in front of his chest and pushing it through the open door, Parrish limited Dingman's ability to close the door and to stop Parrish from leaving the cell. It was reasonable for Dingman to view this as passive resistance and a threat to his safety, further justifying the use of force. *See Hicks*, 640 F.3d at 842 (explaining the use of force is justified where the officer has a reasonable belief a detainee constitutes a threat to his safety); *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required.").

Parrish further contends that the amount of force used was unreasonable. "[O]fficers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Dingman was forced to make a split-second judgment when Parrish suddenly moved toward an open cell door holding the mattress. To restrain and handcuff him, Dingman forced him into the wall and leveraged him to the ground. This is a common technique to restrain individuals and was proportional to the need for force. *See Blazek v. City of Iowa City*, 761 F.3d 920, 923 (8th Cir. 2014) (describing a similar handcuffing technique as a "relatively common and ordinarily accepted non-excessive way to detain an arrestee," *quoting Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002)); *Hosea v. City of St. Paul*, 867 F.3d 949, 958–59 (8th Cir. 2017) (finding no constitutional violation where an officer tackled a suspect after he began complying with orders to lower himself to the ground); *Hicks*, 640 F.3d at 842 (holding the officer's use of an arm-bar maneuver to restrain a resistant detainee objectively reasonable). *Cf. Cravener v. Shuster*, 885 F.3d 1135, 1140 (8th Cir. 2018) ("Unarmed, passively resisting subjects can pose a threat necessitating the use of taser force."). Dingman's handcuffing also complied with Hamilton County Jail policy authorizing the use of "hands" and "compliance holds" against a passively resistant

inmate. *See Kingsley*, 135 S. Ct. at 2474 (recognizing courts' "deference to policies and practices needed to maintain order and institutional security is appropriate").

Due to the need to maintain order and institutional security and Dingman's reasonable belief that Parrish posed a security threat, the amount of force used was objectively reasonable. Because he did not violate Parrish's constitutional rights, Dingman is entitled to qualified immunity.

## III.

Parrish also appeals the grant of summary judgment on the Iowa state-law claims for assault and battery and respondeat superior liability. To prevent an arrested person from escaping, Iowa law permits police to use the amount of force that the officer "would be justified in using if the officer . . . were arresting such person." **Iowa Code § 804.13**. To make an arrest, police can use "any force which the . . . officer reasonably believes to be necessary to effect the arrest." ***Id.* § 804.8**. Iowa courts apply an objective reasonableness standard to an officer's use of force under these statutes. *See **Chelf v. Civil Serv. Comm'n of Davenport***, 515 N.W.2d 353, 355–56 (Iowa Ct. App. 1994). *See also **Lawyer v. City of Council Bluffs***, 240 F. Supp. 2d 941, 953 (S.D. Iowa 2002). Because Dingman's use of force was objectively reasonable, summary judgment was appropriate for the assault and battery and respondeat superior claims. *See* **Iowa Code § 670.4(1)(c)** (no municipal liability where the employee "exercis[es] due care[] in the execution of a statute"); ***Dickens v. Associated Anesthesiologists, P.C.***, 709 N.W.2d 122, 125 (Iowa 2006) ("One of the limitations of the [respondeat superior] doctrine is that the employer has no liability unless the employee is liable.").

\* \* \* \* \* \* \*

The judgment is affirmed.

WOLLMAN, Circuit Judge, concurs in the result.

_____