# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 18-2061

———————————————

Kathy Fischer

*Plaintiff - Appellant*

v.

Josh Hoven, in his individual capacity; Barry Hillestad, in his individual capacity;
Day County, a South Dakota political subdivision, its agents, subsidiaries and employees

*Defendants - Appellees*

————————

Appeal from United States District Court
for the District of South Dakota - Aberdeen

————————

Submitted: March 13, 2019
Filed: June 3, 2019

————————

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

————————

BENTON, Circuit Judge.

Kathy Fischer sued Deputy Joshua J. Hoven, Sheriff Barry Hillestad, and Day
County under 42 U.S.C. § 1983. The district court[1] granted qualified immunity to

———————————————

[1]The Honorable Charles B. Kornmann, United States District Judge for the
District of South Dakota.

Hoven, and summary judgment to Hillestad and the County. ***Fischer v. Hoven***, 2018 WL 2012908 (D.S.D. Apr. 30, 2018). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

After sharing almost three bottles of wine, Fischer and her friend, Susan Clynick, went to the Andover Bar. Both were intoxicated. The bar owner had previously told Clynick she was not allowed in the bar. When they arrived, the owner requested she leave. She refused. He called the police to have her removed.

Arriving, Deputy Hoven asked Clynick to leave. She agreed to accompany him outside. At her request, he went back inside to tell Fischer that Clynick had to leave. Fischer followed Hoven outside where Clynick was waiting. Fischer yelled at Hoven that they had a right to be in the bar, then went back inside to complain to the owner. Due to her intoxication, she does not remember going outside with Hoven, or going back inside. Outside, Clynick and Hoven continued to talk until the owner came out and asked Hoven to remove Fischer from the bar.

Returning inside, Hoven told Fischer the owner wanted her to leave. She yelled that she would not leave and walked outside to the bar patio. Hoven followed, requesting a second time that she leave. She did not obey. Grabbing her arm, he put her in an "escort" position and walked her outside toward his vehicle. She continued to yell, but did not resist. Fischer recalls talking to Hoven on the patio and asking him why he was "talking so mean to me." She does not remember anything that happened after that.

Once outside, Fischer and Clynick began walking away from the bar at Hoven's instruction. Fischer then turned around and walked toward Hoven, "flailing" her arms and yelling at him about being removed from the bar. She got close to him

-2-

and put her left hand on his right shoulder. Grabbing her left arm, Hoven placed her in an escort position against his vehicle and announced she was under arrest for disorderly conduct. She continued to yell at him. Clynick then came toward Hoven. He stepped toward her with his right hand extended into her shoulder. She fell to the ground.

Hoven had his left hand on Fischer's wrist, with her arm behind her back. He reached for his handcuffs. She turned to her left toward him. He executed an arm-bar takedown, putting his right hand on her tricep above the elbow and below the shoulder. Fischer landed face-first on the ground. She suffered a facial cut, broken nose, broken tooth, and broken bones in her right arm and hand.

Fischer sued Hoven for excessive force. She also sued Sheriff Hillestad and Day County for failure to train and supervise. The district court granted summary judgment to Hoven, Hillestad, and Day County. Fischer appeals her claim against Hoven for excessive force.[2]

II.

This court reviews de novo the grant of summary judgment on the basis of qualified immunity, viewing the record most favorably to the nonmoving party. *Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018). Hoven is entitled to qualified immunity unless Fischer can show: (1) that he "violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

---

[2]On appeal, Fischer waives her failure to train and supervise claims against Hillestad and Day County.

Fischer claims Hoven's use of force violated her Fourth Amendment right to be free from excessive force. The test for a constitutional violation is "whether the amount of force used was objectively reasonable under the particular circumstances." *Montoya v. City of Flandreau*, 669 F.3d 867, 870–71 (8th Cir. 2012). Objective reasonableness is "judged from the perspective of a reasonable officer on the scene," in light of the "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989), *citing* *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985); *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968). The degree of injury suffered may also be relevant to show the amount and type of force used. *Montoya*, 669 F.3d at 871.

Fischer argues Hoven's use of force was excessive because she was not resisting arrest or attempting to flee, did not commit a violent or serious crime, and did not pose a threat to the safety of Hoven or others. *See* *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) ("[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public."). She relies on several cases where this court denied summary judgment because of genuine issues of material fact whether the officers used excessive force against a nonviolent misdemeanant. *See* *Small v. McCrystal*, 708 F.3d 997, 1005–06 (8th Cir. 2013); *Montoya*, 669 F.3d at 871–72; *Shannon v. Koehler*, 616 F.3d 855, 862–63 (8th Cir. 2010). Like the individuals in these cases, Fischer was a misdemeanant who suffered more than de minimis injuries. *See* *Small*, 708 F.3d at 1005; *Montoya*, 669 F.3d at 872; *Shannon*, 616 F.3d at 859, 863.

The cases, however, are factually distinguishable. First, in *Montoya* and *Shannon*, the officers and suspects presented differing factual accounts, creating genuine issues of material fact. *See* *Montoya*, 669 F.3d at 872 ("While a jury may credit Officer Hooper's characterization of the incident and disbelieve Montoya at

trial, it is not our function to remove the credibility assessment from the jury."); **Shannon**, 616 F.3d at 862 ("The [district] court also found that there were genuine disputes about whether Shannon poked Officer Koehler in the chest and about the severity of the injuries that Shannon suffered . . . ."). Because Fischer could not remember most of her interactions with Hoven—and thus did not present a different version of the facts—there is no factual dispute in this case. Second, viewing the facts favorably to the nonmoving party, the officers in Fischer's cases did not have a reasonable belief the suspects were resisting arrest or posed any safety threat. *See* **Small**, 708 F.3d at 1005–06 (tackling nonviolent misdemeanant who was not a threat and did not resist or flee was excessive); **Montoya**, 669 F.3d at 871–72 (leg sweep excessive on nonviolent misdemeanant who was not threatening anyone, actively resisting arrest, or attempting to flee); **Shannon**, 616 F.3d at 862–63 (unreasonable to employ takedown maneuver on nonviolent misdemeanant who was not threatening anyone or resisting arrest).

Here, viewing the facts favorably to Fischer, a reasonable officer could have believed Fischer was resisting arrest and posed a threat to his safety. Hoven faced a tense, unpredictable situation—the only officer on the scene with two hostile, intoxicated individuals. *See* **Cook v. City of Bella Villa**, 582 F.3d 840, 849–51 (8th Cir. 2009) (officer facing four intoxicated, non-compliant individuals justified in using force against individual who stepped toward him); **Marvin v. City of Taylor**, 509 F.3d 234, 246 (6th Cir. 2007) (force was objectively reasonable partly because the individual's "heavy intoxication created a volatile situation"); **Wilson v. Flynn**, 429 F.3d 465, 468 (4th Cir. 2005) (considering suspect's intoxication to determine whether he posed a threat to the safety of officers and others). Fischer ignored his orders to leave the bar and yelled at him several times. Walking away, she turned around and came close enough to touch his shoulder. After he put her into an escort position and announced she was under arrest, Clynick approached him and Fischer turned toward him. Fischer claims she was turning around to see what happened to

-5-

Clynick. An arrestee's subjective motive, however, "does not bear on how reasonable officers would have interpreted [her] behavior." ***Ehlers v. City of Rapid City***, 846 F.3d 1002, 1011 (8th Cir. 2017). It was reasonable for Hoven to view Fischer's conduct as resistance and a threat to his safety, justifying the use of force. *See* ***Parrish v. Dingman***, 912 F.3d 464, 468 (8th Cir. 2019) (use of force justified where detainee could be viewed as passively resisting and threat to officer's safety); ***Ehlers***, 846 F.3d at 1011 (use of force permissible on resistant arrestee); ***Shannon***, 616 F.3d at 863 ("[T]here can be no doubt that officers are permitted to use force when their safety is threatened.").

The amount of force was objectively reasonable. Hoven employed an arm-bar takedown to restrain and handcuff Fischer. She suffered serious injuries, including broken bones in her hand, arm, and nose; a broken tooth; and a facial cut. *See* ***Montoya***, 669 F.3d at 872 ("[T]he severity of the injuries she sustained is a relevant factor in determining the reasonableness of the force used."). Hoven might have used less force to secure Fischer. However, this court views Hoven's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," recognizing that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." ***Graham***, 490 U.S. at 396–97, *citing* ***Terry***, 392 U.S. at 20–22. The arm-bar takedown is a "common technique to restrain individuals." ***Parrish***, 912 F.3d at 468. Because a reasonable officer could perceive Fischer as a resistant arrestee who threatened his safety, Hoven's use of the arm-bar takedown was objectively reasonable. *See* ***id.*** (arm-bar takedown not excessive where detainee turned toward open cell door holding a mattress); ***Ehlers***, 846 F.3d at 1011 (takedown objectively reasonable on nonviolent misdemeanant who "at least appeared to be resisting" by ignoring officer's orders).

Because Hoven's use of force was objectively reasonable under the circumstances, he did not violate the Fourth Amendment and is entitled to qualified immunity. Summary judgment was proper.

* * * * * * *

The judgment is affirmed.

_____