United States Court of Appeals

For the Eighth Circuit

_____

No. 19-3772

_____

Michael McReynolds

*Plaintiff - Appellant*

v.

Officer Darrell Schmidli; Officer Derek Gentile; City of Independence, Missouri

*Defendants - Appellees*

Chief Tom Dailey; Chief Eric Onstott

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 4, 2021
Filed: July 13, 2021

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Michael McReynolds sustained significant injuries during the course of an arrest on domestic violence and related charges. McReynolds has sued the arresting

officers, city officials, and the City of Independence, Missouri (the "City"), claiming his constitutional rights were violated in a number of ways. McReynolds asserts the arresting officers used excessive force to effectuate the arrest, knowingly pursued false charges, prepared false reports, and offered false testimony in a prosecution for interfering with police. McReynolds also asserts a claim against the City under Monell v. Dep't of Social Services, 436 U.S. 658 (1978). The district court granted summary judgment to the defendants on all claims and McReynolds appeals. We affirm in part and reverse in part.

## I. BACKGROUND

We recite the facts as determined by the district court, which appropriately construed genuinely disputed facts in a light most favorable to McReynolds, the non-moving party.[1] During the early morning hours of June 12, 2012, Belynda Canania called 911 about a domestic disturbance, reporting that McReynolds (her boyfriend) was throwing furniture around their apartment. In the background during the call McReynolds can be heard screaming at Canania. Both parties had been drinking.

Officers Darrell Schmidli and Derek Gentile were dispatched to the scene. When Schmidli and Gentile exited their patrol cars and began approaching the house, the officers heard a door close and saw a male matching the 911 description (later identified as McReynolds) coming towards the driveway. McReynolds explained that after the argument with Canania, he left the house to smoke a cigarette.

---

[1]Defendants initially argued the facts set forth in their summary judgment briefing should control because McReynolds failed to comply with Western District of Mo. Local Rule 56.1(b)(1), which states that an opposing party must admit or controvert each of the movant's statement of facts. McReynolds instead submitted his own statement of facts. Counsel for defendants, however, conceded at oral argument that we must construe the facts as determined by the district court.

Parts of the incident that followed were caught on a dashcam mounted on Schmidli's vehicle. Video shows the two officers increasing their pace and then jogging towards the house. While the officers ran out of the view of the dashcam recorder, Schmidli's microphone captured the entire incident. Approximately three to four seconds after Schmidli and Gentile begin to jog, Schmidli is heard to say, "stop right there, don't move, get on the ground." McReynolds stopped and turned around, but was slow to get to the ground. McReynolds asserts any delay was a result of his intoxication, not knowing who was ordering him to the ground, and being in the bright light of the flashlights. Schmidli then more loudly commanded McReynolds to get on the ground. McReynolds dropped to his knees and put his hands in the air. Two seconds passed and Schmidli once again loudly commanded McReynolds to get "all the way on your stomach!" McReynolds immediately responded, "On my stomach?" Without any further direction, Schmidli tackled McReynolds from behind. With a running start, Schmidli thrust his knee into McReynolds' back and his arm into McReynolds' neck, driving McReynolds' face into the pavement with great force. The force of the tackle broke McReynolds' jaw in multiple places.

Having subdued McReynolds, the officers then handcuffed him. McReynolds, bleeding profusely from his face and mouth, immediately complained that the officers had broken his jaw. McReynolds was transported to a local hospital where it was confirmed that he suffered multiple fractures of the jaw. The doctor released McReynolds to Schmidli's custody with a recommendation that McReynolds contact a physician for follow-up treatment.

After McReynolds was released to Schmidli's custody, he was transported to the Independence Police Department and booked on charges of domestic violence assault and interfering with the police. The Independence City Prosecutor's Office ultimately declined to prosecute McReynolds on the domestic violence charge but prosecuted him on the interfering charge. McReynolds was convicted following a

-3-

bench trial. McReynolds appealed and, pursuant to Missouri law, was given a *de novo* jury trial, which resulted in an acquittal.

McReynolds underwent multiple surgeries to repair his jaw. Follow-up procedures ultimately involved extraction of a tooth as well as insertion of metal plates and screws. McReynolds' recovery was complicated by an infection that required repeated packing of the wound. He suffered damage to a major nerve, which has caused a permanent loss of feeling and sensation to a portion of his lower jaw. McReynolds was unable to work for four months during his recovery.

McReynolds commenced this action in the Missouri courts, and the defendants removed to federal court. McReynolds' complaint contains three counts: (1) an excessive force claim against Schmidli and Gentile pursuant to 42 U.S.C. § 1983; (2) a claim for false charges, reports, and testimony against Schmidli, Gentile, and two other officers[2] pursuant to 42 U.S.C. § 1983; and (3) a <u>Monell</u> claim against the City. The defendants successfully moved for summary judgment. The district court concluded that while Schmidli (but not Gentile) had violated McReynolds' constitutional rights, he was entitled to qualified immunity on the excessive force claim because the right was not clearly established. The court also concluded that McReynolds failed to allege sufficient facts to support his due process claim and that McReynolds failed to present evidence showing the City had a policy or custom authorizing the use of unconstitutional excessive force or that the City failed to train its officers on the appropriate use of force during arrests. McReynolds appeals the district court's grant of summary judgment on each of his three claims.

---

[2]McReynolds does not appeal the grant of summary judgment in favor of the two other officers.

-4-

## II.    DISCUSSION

We review the district court's grant of summary judgment *de novo*, "viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011).  However, when opposing parties present two different versions of the facts, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007). Summary judgment cannot be defeated by merely alleging the existence of *some* factual dispute.  "[T]he requirement is that there be no *genuine* issue of *material* fact."  Id.  (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

### A.    Excessive Force Claim

In determining whether qualified immunity shields a law enforcement officer from liability under § 1983, "we ask whether '(1) the evidence, viewed in the light most favorable to [McReynolds], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of [the] violation, such that a reasonable offic[er] would have known that his actions were unlawful.'" Cole ex rel. Est. of Richards v. Hutchins, 959 F.3d 1127, 1132 (8th Cir. 2020) (quoting Rudley v. Little Rock Police Dep't, 935 F.3d 651, 653 (8th Cir. 2019)). "Where the record does not conclusively establish the lawfulness of an officer's use of force, summary judgment on the basis of qualified immunity is inappropriate." Banks v. Hawkins, - - F.3d - -, 2021 WL 2148516, at *4 (8th Cir. May 27, 2021) (citing Nance v. Sammis, 586 F.3d 604, 612–13 (8th Cir. 2009)).

With respect to the first prong, when the evidence is viewed in a light most favorable to McReynolds, the facts establish:  The officers arrived, and without

announcing who they were, ordered McReynolds to stop and get on the ground. McReynolds did not initially know who they were. As soon as McReynolds realized he was being ordered to the ground by the police, he complied by getting on his knees and placing his hands in the air. By this time, no reasonable officer could view McReynolds as a threat, or that he was a flight risk. Schmidli then ordered McReynolds to get on his stomach. When McReynolds sought clarification, rather than give further clear instruction, Schmidli tackled McReynolds from behind with significant force, slamming him face-first into the pavement.

At the moment McReynolds was tackled, he was compliant and neither a threat nor a flight risk. We have previously explained that the use of significant force against such a suspect is not objectively reasonable. See Karels v. Storz, 906 F.3d 740, 744–47 (8th Cir. 2018) (concluding the use of a take-down against a suspect who was reportedly drunk and argumentative and was not an immediate threat to anyone's safety or a flight risk was not objectively reasonable); Rokusek v. Jansen, 899 F.3d 544, 547–48 (8th Cir. 2018) (despite refusal to comply with the initial three commands, throwing an unarmed, nonviolent offender who was arrested for driving while impaired face-first to the ground while his arms were immobilized was not objectively reasonable); Neal v. Ficcadenti, 895 F.3d 576, 580–82 (8th Cir. 2018) (finding the use of an arm-bar takedown established a violation of a constitutional right when the suspect was compliant, did not pose a safety risk, and was not resisting arrest, even though he had initially failed to follow the officer's commands).

The officers argue their use of force was reasonable in this case because McReynolds was noncompliant. They focus on McReynolds' purported delays in complying with their initial command to stop and get on the ground, and then once on the ground, McReynolds' failure to immediately get on his stomach. McReynolds' alleged initial and brief noncompliance is immaterial to the excessive force analysis because, as soon as he realized it was police officers yelling at him, he fully complied with the officers' orders to stop and get on the ground. This alleged noncompliance

ended well before the tackle.  As to the purported second incident of noncompliance, prior to using force officers must allow a reasonable opportunity to comply with their commands.  See Smith v. Kansas City Police Dep't, 586 F.3d 576, 581 (8th Cir. 2009) (finding an officer used excessive force where plaintiff was forcibly removed from his home before having the opportunity to comply with commands). Whether a reasonable officer could have viewed McReynolds' alleged delay in getting on his stomach as noncompliant is, at most, a jury question.  Karels, 906 F.3d at 745–46 (affirming the denial of qualified immunity in a take-down case when there were genuine disputes of material fact as to whether arrestee's actions could be interpreted as noncompliant).  McReynolds has shown a violation of the constitutional right to be free from excessive force by law enforcement.

We turn to the second prong of whether the right was clearly established at the time of the incident.  "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable offic[er] would understand that what he is doing violates that right.'"  Banks, at *4 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  While we may look to precedent to define the right at issue, we have explained that a plaintiff is not required "to point to a nearly identical case on the facts for the right to be clearly established."  Id. at *5.

Relying primarily on Kelsay v. Ernst, 933 F.3d 975 (8th Cir. 2019) (en banc), the district court determined that McReynolds' right to be free from excessive force under these circumstances was not clearly established.  We find Kelsay distinguishable from the present case and not controlling here because, as the district court noted, McReynolds has alleged facts from which a jury could conclude that he was not resisting arrest and was fully compliant.  In Kelsay, unlike here, an officer directed Kelsay to "get back here" as he ran up behind her and grabbed her arm. Kelsay initially stopped and turned to face the officer but, after the officer released her arm, Kelsay continued to walk away from the officer.  That Kelsay continued to walk away from the officer, openly disregarding a direct and lawful command, was

-7-

significant to the majority's decision. The predicate fact present in Kelsay and missing here was direct defiance by the subject of the officer's command. Here, McReynolds was on his knees with his hands raised at the time that he was tackled. McReynolds did not ignore the officers' commands and he was not walking away from them.

Kelsay and this case are similar with respect to the end result—a violent takedown by a police officer that resulted in broken bones. But, because we find the events preceding the takedown in this case fundamentally dissimilar to those in Kelsay, we look to other precedent. This incident happened in June 2012. As we held in Neal, "[i]n June 2012, the state of the law would have given a reasonable officer fair warning that using physical force against a suspect who was not resisting or threatening anyone was unlawful." 895 F.3d at 582. In a case decided a few months before this incident, we reversed the district court's grant of qualified immunity to an officer that performed a "leg sweep" takedown of a suspect. Montoya v. City of Flandreau, 669 F.3d 867, 873 (8th Cir. 2012). We explained that "the contours of the right at issue were sufficiently clear to inform a reasonable officer in Officer Hooper's position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee." Id.; see also Shekleton v. Eichenberger, 677 F.3d 361, 366 (8th Cir. 2012) (determining the officer's deployment of his taser gun was not reasonable against an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to flee, and did not behave aggressively); Shannon v. Koehler, 616 F.3d 855, 863 (8th Cir. 2010) (finding it was not reasonable for officer to use more than *de minimis* force against person suspected of committing a non-serious crime, was not threatening anyone, and was not resisting arrest).

Applying the requisite amount of specificity, we conclude that a reasonable officer would have had fair warning that, in June 2012, he could not violently takedown a person who was not threatening anyone, not actively resisting arrest, and

not attempting to flee. The district court erred in granting qualified immunity to Schmidli.

Because "[a]n officer may be held liable only for his or her own use of excessive force," we must review each officer's actions separately. Smith v. City of Minneapolis, 754 F.3d 541, 547–48 (8th Cir. 2014) (citation omitted). McReynolds relies on Gentile's report in asserting that a jury question exists as to Gentile's role in the takedown. Specifically, Gentile stated in his report that "Officer Schmidli and I then pushed him to the ground, Officer Schmidli landing on top of him and I with a wrist lock on his left wrist." Gentile's written declaration under oath, however, is more plain about his role in the takedown: "Officer Schmidli then pushed the suspect to the ground, landing on top of him, and I was able to get the suspect in a wrist lock." And, while McReynolds did state in his deposition that "[t]hey just ran straight up and tackled me," his testimony clearly places the focus on Schmidli:

> Q:   Do you know which officer it was that tackled you?
> A:   Schmidli.
> Q:   Do you know whether he was the one yelling at you as well?
> A:   He was the one.
> Q:   When you say tackled, so we are clear on the record, what do you mean by that?
> A:   I guess it was more of a forceful knee to the back and forearm to the back of my head driving me into the ground. I don't know what you would call that. I don't know what you would call it. Some type of tackle move, tactic. I don't know. It was a knee to the back, middle of my back and forearm to the back of my head driving me into the ground.

Even in a light most favorable to McReynolds, the record shows that Gentile's involvement was a wrist lock and that the source of the excessive force was Schmidli. Under these facts, Gentile is entitled to qualified immunity because there is

insufficient evidence that he used excessive force or significantly contributed to the driving force that caused the injury.

We reverse the district court's grant of summary judgment on the basis of qualified immunity to Schmidli because it was clearly established at the time of the incident that the level of force Schmidli asserted against McReynolds, who was not resisting, was not a threat, and was not a flight risk, was unreasonable and in violation of McReynolds' constitutional rights. We affirm the district court's grant of summary judgment on the basis of qualified immunity to Gentile.

## B.    False Reports and Summons Claim

Although McReynolds' due process claim was initially broader, on appeal he only argues that the officers violated his right to due process of law when they filed false police reports and served a false summons, which led to a false prosecution. We construe McReynolds' claim as an alleged violation of his substantive due process rights.[3]  Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012) (explaining the deliberate manufacture of false evidence contravenes the Due Process Clause).

A false evidence claim requires proof that the officers deliberately fabricated evidence in order to frame McReynolds. See Mitchell v. Dakota Cty. Soc. Servs., 959 F.3d 887, 899 (8th Cir. 2020). McReynolds has failed to provide evidence sufficient to survive summary judgment because he has not provided any evidence that any inaccuracy in the officers' reports was fabricated in order to frame him. Nor can any

---

[3]To the extent that McReynolds intended to assert a claim for false arrest, he conceded below that the officers had arguable probable cause to arrest him for domestic violence. See Arnott v. Mataya, 995 F.2d 121, 124 n.3 (8th Cir. 1993) (noting an arresting officer can avoid liability for false arrest if he has probable cause to carry out an arrest). The district court properly granted the defendant officers summary judgment on that claim.

reasonable inference be drawn from McReynolds' version of the facts that would allow a finder of fact to conclude that Schmidli and Gentile deliberately lied with the intention of framing him. The defendant officers are therefore entitled to summary judgment on McReynolds' substantive due process claim.

### C. Monell Claim

Finally, McReynolds argues the City has an unofficial custom authorizing officers to use excessive force in effectuating arrests, and this custom resulted in his injuries. This claim is without merit because while an unofficial custom resulting in a constitutional violation can be the basis for municipal liability under § 1983, see Monell, 436 U.S. at 690–91, McReynolds must prove "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," Malone v. Hinman, 847 F.3d 949, 955 (8th Cir. 2017). The only evidence that McReynolds asserts in support of this claim is his June 2012 arrest and a 2008 DUI arrest during which Schmidli allegedly used excessive force. Even assuming officers used excessive force in effectuating both arrests, these two incidents do not constitute a pattern of widespread and pervasive unconstitutional conduct. See Brewington v. Keener, 902 F.3d 796, 802 (8th Cir. 2018) (holding that two instances of excessive force are not a pattern of widespread and pervasive conduct); Smith v. Watkins, 159 F.3d 1137, 1138 (8th Cir. 1998) (noting two specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct). Without more, the City was entitled to summary judgment on the Monell claim.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Schmidli on the excessive force claim, and affirm on all other claims.

_____