# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2854

———————————————

Fontell Demann Fuller

*Plaintiff - Appellee*

v.

Stanley Hafoka, UNDER the Color of State Law, Individual Capacity & Official Capacity

*Defendant - Appellant*

Devin Sullivan, UNDER the Color of State Law, Individual Capacity & Official Capacity; Rob Erickson, UNDER the Color of State Law, Individual Capacity & Official Capacity; Ahmed Dualeh, UNDER the Color of State Law, Individual Capacity & Official Capacity; Janet Snyder, UNDER the Color of State Law, Individual Capacity & Official Capacity; Taylor Kuseske, UNDER the Color of State Law, Individual Capacity & Official Capacity; Steven Routhe, UNDER The Color of State Law, Individual Capacity & Official Capacity

*Defendant*s

———————

Appeal from United States District Court
for the District of Minnesota

———————

Submitted: October 20, 2022
Filed: February 3, 2023
[Unpublished]

———————

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

PER CURIAM.

Officer Stanley Hafoka tackled Fontell Fuller, who was in jail awaiting trial. On summary judgment, the district court[1] denied qualified immunity. We affirm.

I.

Following an arrest for possessing a firearm as a felon, Fuller spent time in the Ramsey County Adult Detention Center. His stay included a stint in administrative segregation, where inmates can spend up to three hours a day in a glassed-in recreation area. A panic button is available for emergencies.

When Fuller wanted immediate access to his legal papers, he pressed the panic button. An officer told him over the intercom that he could see them after filing a written request, but Fuller remained unsatisfied. He continued to press the panic button and make demands until he was ordered to return to his cell. Three officers came to escort him.

A video camera captured what happened next. During the walk back, the officers trailed behind him in a single-file line. On the way, Fuller stopped at a table and picked up a few items: a hygiene kit, some papers, and maybe a pencil. He then hurled those items in front of him, which prompted Officer Hafoka to grab Fuller's neck and slam him to the ground. Eventually, after handcuffing him, the officers pulled Fuller back to his feet.

_____

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

Left with a fractured ankle, knee contusion, and lump on the forehead, Fuller sued everyone involved under 42 U.S.C. § 1983. Only one claim survived summary judgment: the one against Officer Hafoka for allegedly using excessive force against him. Our task is to determine whether the district court should have dismissed it too.

## II.

"Cases in which a district court denies qualified immunity at the summary-judgment stage typically follow one of two paths on appeal." *N.S. v. Kan. City Bd. of Police Comm'rs*, 933 F.3d 967, 969 (8th Cir. 2019). One is reversal because, "under a plaintiff-friendly version of the facts, there was no constitutional violation or the underlying right was not clearly established." *Id.* Here, applying de novo review, we take the other path. *See Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). Accepting the district court's factual presumptions, we affirm because a reasonable jury could conclude that Officer Hafoka "violat[ed] . . . clearly established law." *Graham v. St. Louis Metro. Police Dep't*, 933 F.3d 1007, 1009 (8th Cir. 2019) (citation omitted).

### A.

Pretrial detainees have a right to be free from objectively unreasonable uses of force. *See* U.S. Const. amend. XIV; *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *see also Davis v. White*, 794 F.3d 1008, 1011–12 (8th Cir. 2015) (explaining that the Fourth Amendment's "objective[-]reasonableness standard" applies to pretrial detainees). What matters are the "facts and circumstances of each particular case." *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).[2]

---

[2]We deny all pending motions, including Fuller's numerous challenges to appointed counsel's decision to bring *Kingsley* to our attention.

The key evidence here is a video recording showing the takedown. Relied on by the district court in denying summary judgment, it depicts Fuller walking "briskly" to his cell at the direction of the officers behind him. Once he reached his cell door, however, he abruptly "fl[u]ng" his papers and personal items "against the wall directly in front of him." But at no point did he "turn toward the trailing officers." *See Kingsley*, 576 U.S. at 397.

On these facts, the district court concluded that nothing Fuller did qualified as active or passive resistance or posed "a threat to [the officers'] safety." *Parrish v. Dingman*, 912 F.3d 464, 468 (8th Cir. 2019); *cf. Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) (concluding that an inmate leaping *toward* an officer justified the use of force). Indeed, right before the takedown, the video shows Fuller following instructions, even if he was visibly "angry" at the time.

Yet Officer Hafoka slammed him down onto a hard concrete floor using a chokehold-takedown maneuver. There was no advance warning, nor was there any effort "to temper or to limit the amount of force." *Kingsley*, 576 U.S. at 397. In a non-emergency situation like this one, a reasonable jury could conclude that he crossed a constitutional line. *See Smith v. Conway County*, 759 F.3d 853, 859 (8th Cir. 2014).

B.

And the constitutional line was clearly established. As the district court explained, it is clear that "a pretrial detainee who [is] agitated [yet] complying with the last directive that he had been given and who [does] not pose an immediate threat to himself or others" has a clearly established right "not to be violently taken to the ground without any warning."

Several cases establish this principle. In one, we concluded that an officer went too far when he used a leg-sweep maneuver to take down an individual who "was not threatening anyone, was not actively resisting arrest, and was not

-4-

attempting to flee." *Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012); *see Parrish*, 912 F.3d at 467 (applying the Fourth Amendment standard to a pretrial-detainee case). The same goes for an officer who tackles or punches a non-violent and non-threatening individual in an effort to bring him down. *McReynolds v. Schmidli*, 4 F.4th 648, 654–55 (8th Cir. 2021) (tackling a suspect); *Rohrbough v. Hall*, 586 F.3d 582, 585–86 (8th Cir. 2009) (punching a suspect in the face and then taking him down); *see Smith*, 759 F.3d at 860–61 (reaching a similar conclusion in a pretrial-detainee case). These cases clearly forbid a "violent[] takedown" of an individual "who [is] not threatening anyone" or "attempting to flee." *McReynolds*, 4 F.4th at 655.

### III.

We accordingly affirm the judgment of the district court.

_____