# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 21-3267

_____

Casondra Pollreis, on behalf of herself
and her minor children, W.Y. and S.Y.

*Plaintiff - Appellant*

v.

Lamont Marzolf; Josh Kirmer

*Defendants - Appellees*

------------------------------

Roderick and Solange MacArthur Justice Center

*Amicus on Behalf of Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas

_____

Submitted: September 21, 2022
Filed: April 27, 2023

_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

On January 8, 2018, Casondra Pollreis saw Officer Lamont Marzolf pointing a firearm at her 12- and 14-year-old sons down the street from their family's home. When Pollreis approached to ask what happened, Officer Marzolf repeatedly ordered her to "get back." After Pollreis questioned the order, Marzolf briefly pointed his taser at her. Pollreis then complied with his orders. Her sons were eventually cleared of any wrong-doing. Pollreis filed a 42 U.S.C. § 1983 action against Officer Marzolf claiming he used excessive force. The district court[1] granted summary judgment to Officer Marzolf on the claim after concluding he was entitled to qualified immunity. Pollreis appeals, and we affirm.

## I.  Background

After receiving a tip, members of the Springdale Police Department were conducting surveillance on a suspected gang member and attempted a traffic stop on a Chevy Cobalt. The driver refused to stop and eventually crashed the car. The four occupants of the car fled, with two heading north and two heading south.

Officer Marzolf received instructions to set up a perimeter near the suspected gang member's house. Officer Marzolf was also informed over the radio that one suspect was known to carry a gun. Mere moments later, W.Y. and S.Y., Pollreis's sons, began walking down the street toward Officer Marzolf's car. Officer Marzolf turned on his high beams, stopped his car, and asked, "Hey, what are you guys doing?" W.Y. responded, but it is not intelligible on the dashcam. Officer Marzolf then instructed the boys to stop and turn away as he walked toward them with his firearm drawn.

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

-2-

Officer Marzolf continued to question the suspects for approximately one minute before Pollreis walked up from behind him asking, "Officer, officer, may I have a word with you?" Officer Marzolf reported to dispatch that he had two juvenile individuals in dark hoodies and pants stopped, and Sergeant Kirmer gave instructions to detain them. Then, Officer Marzolf ordered the boys to lay on the ground, and they complied. Before long, Pollreis approached Officer Marzolf and asked, "what happened?" and Officer Marzolf acknowledged her by saying, "Hey, step back." After Pollreis identified herself as the boys' mother, Officer Marzolf again ordered her to "get back" while stepping toward her. She responded, "Are you serious?" Officer Marzolf answered, "I am serious, get back." While still pointing his gun at the boys with his right hand, Officer Marzolf then pulled his taser with his left hand and pointed it at Pollreis. Pollreis, attempting to reassure her children said, "It's OK, boys" while Officer Marzolf holstered his taser and again ordered her to "get back." At this point, Pollreis asked, "Where do you want me to go?" Officer Marzolf responded, "I want you to go back to your house." She replied, "Are you serious? They're 12 and 14 years old." Officer Marzolf retorted, "And I'm looking for two kids about this age right now, so get back in your house." Pollreis acquiesced and told her boys, "You're OK guys, I promise." Pollreis went back to her house and does not appear on the dashcam video again.

Officer Marzolf continued to detain the boys for several more minutes while he, and later another officer and sergeant, questioned them. After the likelihood of the boys being the fleeing suspects was dispelled, they were released. Based on the timestamped dashcam, the entire encounter lasted approximately seven minutes.

At his deposition, Officer Marzolf explained that he "was going to stop any individuals along that area that I was working because that's what your job is on the perimeter." He also highlighted that evening's dark and rainy conditions, which made it difficult to see. Officer Marzolf testified that information "was relayed over the radio that [one of the fleeing suspects] had been known to carry a handgun and that ammunition magazines were found." He also explained that he drew his taser

on Pollreis because she disobeyed his verbal commands and came up behind him in a "high threat situation."

Pollreis brought four claims under 42 U.S.C. § 1983 on behalf of her children. This court previously held Officer Marzolf was entitled to qualified immunity on these claims. *See Pollreis v. Marzolf*, 9 F.4th 737 (8th Cir. 2021). Pollreis also brought an excessive force claim on her own behalf. The district court granted Officer Marzolf summary judgment, holding he was entitled to qualified immunity. Pollreis now appeals the grant of qualified immunity on her excessive force claim against Officer Marzolf.

## II. Analysis

"Summary judgment is appropriate if the evidence, viewed in the light most favorable to [Pollreis] and giving [her] the benefit of all reasonable inferences, shows there is no genuine issue of material fact." *Goffin v. Ashcraft*, 977 F.3d 687, 690–91 (8th Cir. 2020) (quoting *Morgan v. A.G. Edwards*, 486 F.3d 1034, 1039 (8th Cir. 2007)). "We review *de novo* a district court's grant of summary judgment on the basis of qualified immunity." *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017). This court may affirm the grant of summary judgement "on any ground supported by the record." *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019).

"Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To defeat qualified immunity, Pollreis must prove that: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Pollreis*, 9 F.4th at 743 (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

Pollreis argues that Officer Marzolf's pointing of his taser at her constituted excessive force in violation of her Fourth Amendment rights. "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Although the claim here alleges use of excessive force, the parties dispute the threshold question whether [Officer Marzolf] seized [Pollreis] at all within the meaning of the Fourth Amendment." *Martinez v. Sasse*, 37 F.4th 506, 509 (8th Cir. 2022). Therefore, to prevail on the first prong of the qualified immunity analysis, whether there was a constitutional violation, Pollreis must demonstrate that (1) Officer Marzolf seized her, and (2) the force applied was objectively unreasonable under the totality of the circumstances. *Clark v. Clark*, 926 F.3d 972, 977 (8th Cir. 2019).

## A. Seizure

The "seizure" of a person "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). The parties agree Officer Marzolf did not use physical force as he did not touch Pollreis, so the question is whether there was a show of authority that in some way restrained her liberty.

"[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that [s]he was being ordered to restrict h[er] movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). "Unlike a seizure by force, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement." *Torres*, 141 S. Ct. at 1001; *accord Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207–08 (8th Cir. 2013).

-5-

To make this determination, we consider factors including "the presence of several officers, a display of a weapon by an officer, physical touching of the person, or the 'use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007) (quoting *United States v. Hathcock*, 103 F.3d 715, 718–19 (8th Cir. 1997)). "[I]f in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave," a seizure by a show of authority has occurred. *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)).

The seizure of a person often occurs in the context of an arrest or detainment. Here, Pollreis was neither arrested nor detained. Neither was she told she was "not free to leave[.]" *Brendlin*, 551 U.S. at 255 (quoting same). Nonetheless, we conclude Pollreis was seized, even if for only a moment. For a brief time, Pollreis stood, with a taser pointed at her. She then asked, "Where do you want me to go?" and was told, after more back and forth, to "go back to your house." Viewed in the light most favorable to Pollreis, when Officer Marzolf aimed his taser at her, he restricted her freedom of movement while displaying a weapon. *See Hodari D*., 499 U.S. at 627–28. Officer Marzolf reiterated his command to "get back" in a "tone of voice indicating that compliance . . . might be compelled," *Flores-Sandoval*, 474 F.3d at 1145, while also aiming a taser. A reasonable person in Pollreis's shoes would not believe she was free to ignore Officer Marzolf's commands. This is further evidenced through the fact that Pollreis submitted to Officer Marzolf's show of authority by leaving the scene even though her children were being detained at gunpoint. Considering the circumstances, we hold Officer Marzolf briefly seized Pollreis through a show of his authority.

## B. Objective Reasonableness of the Force

To establish a constitutional violation, Pollreis must next "show the amount of force used was objectively unreasonable under the particular circumstances." *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022).

"[R]easonableness is generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)).

Thus, "[f]orce may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat." *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018). However, "threat[s] to an officer's safety can justify the use of force," even if someone is not actively resisting arrest. *Brown v. City of Golden Valley*, 574 F.3d 491, 497 (8th Cir. 2009).

Pollreis was not suspected of committing any crime and was not actively resisting arrest. But while she commendably remained calm and nonthreatening, a reasonable officer in this situation would be understandably concerned for his own safety. This event took place at night in the rain. Officer Marzolf was alone on the scene when Pollreis approached from behind. Officer Marzolf was placed in a position where he had two possibly armed suspects detained in front of him and a third unknown individual approaching from behind, creating a potentially serious safety risk. Adding to the circumstances, when Officer Marzolf ordered Pollreis to "get back," she moved to the side, but she did not immediately comply by moving backward. Rather, she questioned the order and moved sideways. Ordered to get back a second time, she again questioned the order and remained where she was until after the taser was drawn.

We must "judge the reasonableness of [an officer's] use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (quoting *Graham*, 490 U.S. at 396); *accord Zubrod v. Hoch*, 907 F.3d 568, 575–76 (8th Cir.

2018). Under the totality of the circumstances, Officer Marzolf momentarily pointing his taser at Pollreis to gain control of the scene was not unreasonable.[2]

Because we conclude Officer Marzolf did not violate Pollreis's constitutional rights, we need not address whether these rights were clearly established at the time of the incident.

## III. Conclusion

For the reasons stated above, we affirm the district court's order granting summary judgment to Officer Marzolf on Pollreis's excessive force claim.

KELLY, Circuit Judge, dissenting.

I agree that Pollreis was seized within the meaning of the Fourth Amendment. But because genuine issues of material fact remain regarding whether Officer Marzolf's use of force was excessive, I would reverse.

In this qualified immunity appeal, we view the evidence in the light most favorable to Pollreis and draw all reasonable inferences in her favor. Wilson, 901 F.3d at 986, 990; see also Banks v. Hawkins, 999 F.3d 521, 527 (8th Cir. 2021)

_____

[2]The dissent believes we can only reach this result by making inferences in favor of the movant, Officer Marzolf. However, "facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). The evidence we rely upon to reach our legal conclusion that the momentary seizure was not unreasonable is not disputed and therefore need not be viewed in the light most favorable to the nonmoving party. Rather, both parties agree, and we can see from the dashcam video, that (1) Officer Marzolf was on the scene alone; (2) Officer Marzolf was ordered to hold two potentially armed suspects at the scene; (3) Pollreis approached Officer Marzolf from behind, which pulled his attention away from the potentially armed suspects in front of him; and (4) the event occurred at night. We can also see from the dashcam video that Pollreis did not immediately comply with Officer Marzolf's directive to "get back."

("Where the record does not conclusively establish the lawfulness of an officer's use of force, summary judgment on the basis of qualified immunity is inappropriate.").

According to Pollreis, she saw a police car stop and detain her two sons while they were walking home. When she was approximately "two houses" away from the scene, she began trying to announce her presence to Officer Marzolf. The dashcam video shows Officer Marzolf looking over his shoulder as a person out of frame says, "Those are my boys." A few seconds later, the person asks Officer Marzolf, "Can you hear me?" and he confirms that he can. The person continues to speak, and words like "twelve and fourteen" and "I was waiting for them" can be heard. Officer Marzolf turns his back to the camera,[3] walks towards the boys, and orders them to the ground at gunpoint. By this point, Officer Marzolf knew he had detained "two juveniles," he knew the name of one of them, and the person approaching claimed to be a parent of the boys.

The video then shows that when Pollreis finally comes into view, Officer Marzolf is standing on the sidewalk with a gun drawn on the boys. Pollreis walks out into the street from the sidewalk, directly in front of Officer Marzolf's squad car and asks, "What happened?" Officer Marzolf tells her to "get back." Pollreis could not move directly "back" because the squad car was behind her, so she walks back the way she came, telling the officer "those are my boys" as she does so. In response, Officer Marzolf takes a few steps toward her and yells, "Get back!" Pollreis, now out of frame, asks, "Are you serious?" At that point, Officer Marzolf draws his taser and points it directly at her.

Based on these facts, a reasonable jury could find that Pollreis complied, or was attempting to comply, with Officer Marzolf's request to "get back." See, e.g., McReynolds v. Schmidli, 4 F.4th 648, 653 (8th Cir. 2021) ("[P]rior to using force officers must allow a reasonable opportunity to comply with their commands."); Smith v. Conway Cnty., 759 F.3d 853, 860–61 (8th Cir. 2014) (holding that the

---

[3]The camera was positioned at the front of the squad car facing out.

second use of a taser was not reasonable where a pretrial detainee was no longer acting aggressively towards officers after being tased once and was "attempting to comply with [the officer's] orders"). The video shows Pollreis, in an attempt to avoid backing up into the police car directly behind her, walking away from Officer Marzolf as soon as he tells her to "get back." It is Officer Marzolf who then steps closer to Pollreis—now out of the dashcam's view—while he repeats his order. A reasonable jury could find that Pollreis was complying but that it was not clear just how far "back" Officer Marzolf wanted her to go. Significantly, when Pollreis expressly asked, "Where do you want me to go?" Officer Marzolf told her to "go back to your house." And Pollreis did just that.

The court acknowledges that Pollreis was not suspected of committing any crime, was not resisting arrest, and was calm and nonthreatening. Yet it concludes that her presence raised a concern for Officer Marzolf's safety. The court relies in part on the fact that it was a dark and rainy night—factors a jury could take into consideration. But such conditions do not invariably create a threat to officer safety. And they cannot be dispositive of whether Officer Marzolf's show of force was reasonable when the primary inquiry is whether Pollreis engaged in conduct that would justify the use of force at all. See, e.g., Baude, 23 F.4th at 1073 (explaining that courts must assess "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight"); Brown, 574 F.3d at 497 (concluding that whatever suspicions the officers may have had about the potentially serious crimes the driver committed, the officers had no reason to believe the passenger whom the force was used against had anything to do with the driver's conduct).

The court also concludes that Pollreis "did not immediately comply" with Officer Marzolf's directive to "get back." But we have repeatedly held that whether and to what degree an individual is noncompliant or poses a threat are issues of fact properly resolved by a jury. See, e.g., MacKintrush v. Pulaski Cnty. Sheriff's Dep't, 987 F.3d 767, 770 (8th Cir. 2021) (holding that the district court did not err in ruling

that material factual disputes prevented it from determining whether an officer used reasonable force where there were disputes about an individual's compliance and the level of threat he posed); Schmidli, 4 F.4th at 653 (holding that whether a reasonable officer could have viewed an individual's "alleged delay" in following the officer's directive "as noncompliant is, at most, a jury question"); see also Kelsay v. Ernst, 933 F.3d 975, 988 (8th Cir. 2019) (en banc) (Smith, Chief J., dissenting) (disagreeing with the court's conclusion that the appellant ignored an officer's command and stating that if there is a dispute of fact about whether the appellant complied, "it is material and should be resolved by a jury").

Here, Officer Marzolf had information that the person approaching the scene claimed to be the mother of the two juveniles he had just ordered to the ground at gunpoint and was seeking clarification about what happened. Even if Pollreis could be said to have "questioned" the officer's command, to question an order is not necessarily the same as defying it. Cf. Brown, 574 F.3d at 499 (finding that the officer's use of force was not reasonable where the suspect's "only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator"). A reasonable jury could conclude that any "questions" Pollreis asked of Officer Marzolf were just that, questions, and not a refusal to comply with his commands.

Viewing the evidence in the light most favorable to Pollreis, a reasonable jury could find that drawing a taser on a nonthreatening bystander who was complying or attempting to comply with an officer's orders was not objectively reasonable. Only by making inferences in favor of Officer Marzolf can the court reach a different result. For this reason, I respectfully dissent.

_____